## Case No. 3,051.

### The COMET.

[9 Blatchf. 323.] [1]

Circuit Court, N. D. New York.   Jan. 16, 1872. [2]

COLLISION BETWEEN STEAMERS—LOOKOUT—ERRO-
NEOUS MANOEUVRE.

1. In a collision between two steamers, in the night, the S. and the C., the S. was *held* in fault for not having any lookout assigned or stationed for the performance of that duty; and for starboarding, instead of porting, when the two steamers were meeting nearly end on; and for starboarding when she saw the red light of the C., a short distance off, a very little on her starboard bow; and for not stopping and reversing.

[Applied in The Manitoba, Case No. 9,029. Cited in The Ancon, Id. 348; The Jay Gould, 19 Fed. 769.]

2. It being shown that the S. was negligent, she is to be *held* to clear proof of contributing negligence or fault in the C.

[Cited in The Clarion, 27 Fed. 131; Pierce v. The J. R. P. Moore, 45 Fed. 268; The Athabasca, Id. 655; The John King, 49 Fed. 474.]

3. On the evidence, the C. was *held* not to have been in fault.

[Cited in The Sunnyside, Case No. 13,620.]

[Appeal from the district court of the United States for the northern district of New York.]

[In admiralty. Libel by John V. Detlor and others, owners of the Silver Spray, against the Comet (the Lake & River Transportation Company, claimants).]

George B. Hibbard, for libellants.

John S. Newberry and Henry B. Brown, for claimants.

WOODRUFF, Circuit Judge. The libel herein was filed by the owners of the steamboat Silver Spray, for damages caused by a collision on Lake Huron, between their vessel and the propeller Comet, in which collision the steamboat was sunk. In the district court, the libellants obtained a decree for contribution, upon the ground that both vessels were in fault. 1 Abb. U. S. 451 [Case No. 3,050]. The claimants, owners of the Comet, appealed, and the cause has been tried in this court.

The Spray, a small steamboat of 150 tons burthen, was on a voyage from Goderich, in Canada, on the east side of the lake, to Sarnia, on the east side of the St. Clair river. She left Goderich about 2 o'clock and 45 minutes in the afternoon of the 13th of August, 1869, and took her course south-west by south, (or, by her compass, south by west half-west,) for Fort Gratiot light, on the American or west side, a short distance north of the mouth of St. Clair river. She continued that course until she made the light, directly ahead, when her course was changed to south-west by south half-south, (or, by her compass, south by west,) in order to enter the St. Clair river at the centre of its mouth. While on this course, at a speed of from nine to ten miles an hour, about 10 o'clock at night, and not far from the mouth of the river, green and white lights were seen, (according to the testimony of six witnesses, who were on board,) which bore a little on her starboard bow. These lights, the witnesses say, proved to be on the Comet. The witnesses differ slightly as to the angle of variation from dead ahead. Her master says, one point on her starboard bow; her mate, one half a point to one point; her wheelsman, one half to one point; a passenger, from half a point to a point; her engineer, that it appeared to bear a little to the right of her course; another passenger says, "on the starboard side." After two or three minutes, the master blew two whistles, and, after that, gave an order to starboard the helm, which was done. The change in the bearing of the green light, if any, during that two or three minutes, was so slight, that the mate thought it bore, when the two whistles were sounded, in the direction in which he says he first saw it, namely, from half point to a point on the starboard bow. The master thinks, that, during that interval, if anything, it widened. Having starboarded, the Spray continued under a starboard helm, until the red light of the Comet was seen. According to the testimony of the passenger, who gives its bearing, "it was in the same direction to us, when first discovered, as the green was when first discovered;" and the mate says, that, prior to that, he had not seen any change in the relative position of the white and green lights previously observed. The master and mate think that the red light was from one to two points on their starboard bow. After seeing the red light of the Comet, then distant, as estimated by the master and mate of the Spray, about 300 feet, the master blew two more blasts of the whistle, and gave another order to starboard, and, immediately after, hard-a-starboard, under the influence of which the Spray swung around two or three points; but no effort was made then or previously to slacken speed, or stop or reverse the engine. The Comet struck the Spray "two or three feet forward of her starboard paddle wheel," the direction of the blow being indicated by the captain as "about seven points between the two sterns." The Comet was a much larger vessel, of over 700 tons burthen, and the injury to the Spray was such that she sank almost immediately after the blow.

The night was clear, and there was nothing in the state of the weather, or of the atmosphere, to justify or explain any mistake or error on the part of either vessel, or excuse any neglect of observance of the rules of navigation, or of the requirements of good seamanship. The Comet was bound from

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Reversing decree of the district court in Case No. 3,050.]

Buffalo, New York, to Green Bay. Passing up the St. Clair river, she arrived, shortly before ten o'clock, at the dock in front of the passengers' station of the Grand Trunk Railroad Company, near Fort Gratiot, on the west or American side of the river, and stopped to receive a passenger. When about leaving the dock, her officers saw the lights of vessels apparently about entering the mouth of the river, from the lake, which was about 2,300 feet distant from the dock. In order to avoid them, she "sagged" over to the right or Canada side of the river, near to the shore. Moving up, she passed a schooner, nearly opposite what the witnesses called "Sand Point," on the Canada side, at or about the mouth of the river, leaving her about 200 feet off to port, and blowing one whistle as she passed her. Next, and very soon after, she met and passed a propeller called the Fountain City, and, almost immediately afterwards, the propeller Cleveland, giving them one blast of the whistle as she passed the Fountain City, and leaving them also about 200 feet to port. In avoiding these vessels, the Comet had got into shoaler water than usual, nearer to the Canada shore than the captain had ever been before, and was, according to the testimony, on a course north-east-one-quarter-east, having the red light and two white lights of the Spray on the port bow, and, according to the captain, three or four points on that bow, when he passed the Fountain City. The Comet drew eleven feet, and her captain says: "I starboarded the wheel a little, as I was getting closer to the Canada shore than I had ever been before. I let her (the Spray) come up within a point, or point and a half, on my port bow." The speed of the Comet was about the same as that of the Spray, but, in the river, the current was about three miles an hour—in the lake, the current was less—and the current must be assumed to have reduced somewhat her actual progress. So soon as the Comet had passed the Cleveland, so as to make it apparent that his signal was intended for the Spray, her master blew one whistle, to indicate that each should pass to the right, or port to port, and gave the order to "port half a point and show your red light strong," which, he says, was done, the Spray already, before the change, bearing one and a half points on the port bow. He heard from the Spray the apparent answer, two whistles, and instantly gave the order to stop, and, as rapidly as would give time to execute the order, rang to back, and, as soon as he could feel her back, rang the alarm bell to back strong, and also gave the order to port, and, according to the wheelsman, hard-a-port, under which orders, he says, the Comet swung off three or four points. The Spray having swung around, on her starboard wheel, across the bow of the Comet, the latter, her headway not being overcome, struck the Spray, as already stated.

The testimony of the master, mate, wheelsman, look-out, and engineer, and of one passenger, of the Comet, is to the effect, that, when she passed the propellers, and continuously thereafter, the red light of the Spray was in view over the port bow of the Comet, until just before the collision, when the Spray, swinging around on her starboard helm, brought her green light into view. The faulty negligence and mismanagement of the Spray, and that such negligence and mismanagement were a cause of the collision, was deemed fully established in the district court; and, on this trial, it is hardly claimed that the conclusion of the district court on that point is not correct. In fact, the proof of her fault is fully established by witnesses for the libellants, from their own vessel.

The Spray had no look-out. There was no person on board assigned or stationed for the performance of that duty. Her master stated, that, upon his watch, he looked out, and the mate, on his watch, looked out. The Spray was approaching the mouth of a river navigated by frequent vessels passing each way through the river, from lake to lake. On each side, near the mouth of the river, and up along the shore of the lake, was a railroad, with its depot-houses and switches, with lights, red and green, elevated to signal to approaching trains the condition of the switches, and where colored lanterns on cars, or in the hands of conductors and other attendants, might be expected. In such circumstances, and in view of other suggestions to be presently made, the importance of a look-out exclusively devoted to that duty, and vigilant in its performance, cannot be over-stated; and it will appear, I think, that, had there been a competent and vigilant look-out on the Spray, she would not have made the mistake which, I think, she did make, nor the unfortunate manoeuvre which produced the collision. Indeed, the proof goes even further. It is not necessary to repeat what has so often before been said, that, in circumstances calling for the watchful vigilance of a look-out, the master, or the mate, charged with the general management of the vessel, is not competent to act at the same time as look-out. On this occasion, the mate, left in charge by the captain, appears to have been occupied, for more than an hour, in conversation with a passenger; and when, at the usual time, the captain was called, he joined them; and there is no pretence that either mate or captain discovered the Comet until the passenger enquired of the mate about a green light which he had observed near the centre of the river. In this state of gross inattention, neither the whistle blown by the Comet to signal the schooner, the whistle she gave to the other propellers which she passed, nor, finally, the signal given by the Comet to the Spray, was heard by any one on the latter.

So, also, upon her own testimony, she was in fault in starboarding and persisting therein. Conceding, for the purposes of this point,

that, when she saw a green light, it was the green light of the Comet, her testimony is, that it was at about the centre of the river, and her witnesses place it from half point to a point only on her starboard bow. After observing it, according to their testimony, for a period of two minutes, at least, it opened so little, that even the master qualifies his statement by saying, that it widened, if anything. Considering their own speed, of nine or ten miles an hour, this indicated that, if that light was approaching, it was coming nearly end on. But that is by no means the worst of this fault. Whatever may be true of the green light, if their testimony be taken, they did see the Comet, with her red light in view, distant 300 feet, at least, and bearing very slightly on their starboard bow. To starboard after that, and hard-a-starboard, and rush, with unabated speed, upon almost certain destruction, was recklessness or want of skill, of such degree that no suggestion that peril was then imminent will excuse. They had blown two whistles, as a proposition to pass to the left, and, without any reply of assent, had starboarded. On discovering that the Comet was passing to the right, in obedience to the rule prescribed to steam vessels meeting end on, they made no effort whatever to check the motion of the Spray, but increased the danger by starboarding again. It is palpable, that if, even then, the Spray had either ported, or slowed and backed, and, as I think, also, if she had done nothing, no collision would have happened.

In every view of the circumstances, as presented by her own witnesses, her neglect to slow, stop, and reverse is inexcusable, and, of itself, seems sufficient to account for her disaster, if her actual movements were otherwise deemed justifiable. This reference to the negligence of the Spray is not important as ground for sustaining the like conclusion reached in the district court. Not having appealed from the decision there, the libellants' conduct is not to be examined here with a view to test the correctness of that conclusion. Such negligence is, nevertheless, important to the further enquiry, whether the Comet was also in fault; and, in an apparent conflict of testimony, and an apparent uncertainty as to the accuracy of observations made on the Spray, it may be very significant. When the libellants come into court, themselves showing negligence and want of skill, and seek to cast the burthen of its consequences, in part, upon another vessel, there is some presumption, at least, adverse to their claim; and they may properly be held to clear proof of contributing negligence or fault in the management of the other vessel. Their own negligence sufficiently accounts for their disaster, and it should not be enough that they make the care and skill and good management of the other vessel doubtful.

In this case, after the most careful scrutiny, I cannot escape the conclusion, that there is not so much as doubt. In view of the elaborate and able presentation of the opposite view, in the opinion of the careful, painstaking, and learned judge of the district court, it would have been easy to rest upon his analysis of the evidence, and his estimate of its weight; and, as a mere matter of personal choice, I should much prefer to do so, if such choice might have any place in the discharge of duty. But I am not able to concur in this conclusion. A conviction of the injustice of that conclusion is strengthened by each examination of the testimony, and I am bound, therefore, to acquit the Comet of fault.

The only two supposed facts which were deemed to indicate fault in the Comet, are, first, that she did not maintain a competent and vigilant lookout; and, second, that, after she passed beyond the two propellers, the Fountain City and the Cleveland, she starboarded, and went across the course of the Spray, to her starboard, and, continuing on that course, showing her green light to the Spray until within a short distance, (the greatest stated by the captain of the latter being 330 feet,) suddenly turned, ported her helm, and attempted to pass again across the bows of the Spray. If the evidence warrants these conclusions, then, undoubtedly, the Comet was in fault.

As to the first, there is no just ground for doubting or denying that the Comet had a man on duty as lookout; and, whatever his general competency, he did see the Spray as soon as, or before, the Comet passed the Cleveland, and as soon as there was any occasion for any manoeuvre to avoid her. The captain, also, of the Comet saw the lights of the Spray, when lying at the railroad dock in the river below; and, though then uncertain what the numerous lights then visible indicated, (they, viewed at that distance, suggesting to him and to others on board, that it might be an approaching tow,) he observed them with his glass, made out the different vessels, proceeded to the right hand side of the river, to avoid them, and, before passing the Cleveland, was in full observation of the Spray. He was, therefore, in full charge of the situation, and with full knowledge that the Spray was approaching, and knew her bearing. If he mismanaged after that, the fault was not the want of a competent lookout or of a vigilant lookout, but his own negligence or want of skill. The mate, also, had like knowledge and observation, as, also, the others who testified to seeing and watching the Spray. Indeed, I do not see what any other lookout could have done, which would have affected the question, when the other officers were cognizant of the approach of the Spray, and were actually taking measures to avoid her. I think the inference of fault in the lookout was, in the mind of the learned judge below, connected with the other conclusion, or second alleged fault; that is to say, if, in truth, all on board of the Comet were mistaken in saying that the red light of

the Spray bore on them, from the time the Comet passed the propellers, till the instant before the collision, and the Comet did cross the bows of the Spray between her and the Cleveland, so as to show her green light to the Spray, and, therefore, necessarily, to be herself in view of the Spray's green light, and yet no one on the Comet saw that light, then, indeed, the inference that no sufficient and vigilant lookout was kept on the Comet would be warranted. This is, I think, the ground on which the want of a proper lookout was deemed proved. The enquiry into the conduct of the Comet becomes, therefore, reduced to the second allegation of fault above stated; and, on that subject, I observe:

1. It cannot be denied, upon the proofs, that the Comet did go up the river on the right hand side, near the shore, and keep off towards the Canada shore, until after she passed the propellers. She passed those propellers in the lake, above the mouth of the river. The mate of the Spray had seen the propellers. One of them had passed him, and he saw her enter the mouth of the river. The Comet passed that propeller on her port side, at a distance of 200 feet. At that time she was on a course northeast one-quarter east, and her red light then, beyond all possible question, was in full view from the Spray. If she then crossed the course of the Spray, between her and the propeller Cleveland, to the starboard of the Spray, so as to change her light from red to green, why was not that movement seen by the mate of the Spray especially, and why not, also, by some other one on the Spray?

2. That the Comet did thus cross over between the propeller and the Spray, and, having accomplished that, and so got nearer to her course up the American side of the lake, then, with every motive to continue to move further in that direction, and more fully reach that course, after getting over so as to have the Spray's green light in view, turned back, and attempted to recross before the bows of the Spray, is, in itself, incredible.

3. The master not only regarded an attempt to pass between the Cleveland and the Spray imprudent, but he and the mate, wheelsman, engineer, lookout, and passenger unqualifiedly deny that any such attempt was made. It is true, that, when he found himself nearer than he had ever before been to the Canada shore, he starboarded a little, so that the bearing of the Spray came up a point or point and a half on his port bow. Their combined speed bringing them constantly nearer, she would continue to bear, when they ported, at about the same angle on that bow as before, and thereafter would open further, had she not herself run across the bows of the Comet.

4. The six witnesses from the Comet concur in the statement, that it was the red light of the Spray which was in view from the Comet; and some of them, from their position when seeing it, could not have seen it at all, if it had not been the red light on the port bow. And here it is to me of special importance that—where there are six witnesses from the Spray testifying that they did see the green light of the Comet, and they thereby bring the Comet over to the west of the course of the Spray, and, on the other hand, there are six witnesses from the Comet who testify that she was never in any such relative position to the Spray, and that the red light of the latter was in full view till near the moment of collision—there is testimony from a disinterested party, an observer of the course of the Comet, and of the actual collision, which throws light on the point in conflict. Maisonville, the captain of the steamboat W. J. Spicer, was, with his boat, lying at the railroad dock, when the Comet left it. His view up the river enabled him to see the course of the Comet, and her passing the schooner and propellers; and he declares her very near the Canada shore. He saw the Silver Spray come down, and he witnessed the actual collision; and, upon his information of the place of the collision, the wreck of the Spray was afterwards found and raised. He did not see any such crossing of the Comet past the bows of the Spray, as is necessarily involved in the libellants' testimony; and it is not credible, if even possible, that he should not have seen it if it happened. And it is strongly corroborative of the testimony from the Comet, in this conflict of witnesses, that Lathrop, a wholly indifferent witness, testifies, that, after the collision, the master of the Spray attempted to account for his not stopping, by saying that he thought he could cross the bows of the Comet, and get on to his own side—the Canada shore—and that he was heading right on to the Canada shore.

Hereupon, the question presents itself—What is to be believed concerning the master, mate, wheelsmen, engineer and two passengers on the Spray, who all say, that they saw the green light of the Comet bearing on the starboard bow of the Spray, and that it so continued till suddenly her red light appeared over the same bow? Are they perjured? My conclusion involves no such necessary inference; and, if they are mistaken, the whole pretence of fault on the part of the Comet is at an end. Their seeing the Comet's red light on that bow tends to confirm the testimony from the Comet, for it was after the Spray had starboarded, and had been moving some time to port, on a starboard wheel, that the red light of the Comet was discovered. It should have been seen before, and then it would have been seen on their port bow. By starboarding, they brought it a little on their starboard bow, just before the collision. They did not see the Comet's green light, as they suppose they did. They saw some other light, and, acting on the assumption that it was an approaching vessel, they now say it was the green light of the Comet. A careful examination of

the testimony shows, I think, conclusively, that, unless the Comet crossed the course of the Spray, so as to exhibit a green light, she is without fault. The testimony of her witnesses is positive and has confirmation in the testimony of Maisonville and Lathrop, already referred to. The testimony from the Comet seems also to me to be consistent, natural and credible.

There was less liability to mistake. From the Comet, looking outward towards the lake, there was no other vessel or lights in view. Her officers and others on board had, therefore, nothing to distract their attention or mislead them. On the other hand, the view before the eyes of those on the Spray presented many lights. Her wheelsman had covered the compass and was endeavoring to steer his ship by colored lights which were, or which he supposed were, on shore. He selected a red light on the Canada shore, supposing it, no doubt, one of the semaphore lights along the line of the railroad. The counsel for the claimants suggests that this was the red light of the Comet. Who shall say it was not? By covering his compass, he had rendered it impossible to detect his mistake, if he made that blunder. And who shall say, that, if he was steering by a red light off his port bow, he did not mistake one of the green lights on shore for the green light of the Comet, and then, when, by starboarding, he brought the red light of the Comet in fact just over the starboard bow, conclude that it was a red light on the same vessel on which he had seen the green? But, more plausibly still—the W. J. Spicer, lying at the railroad dock, exhibited her green light fully to the view of the Spray. That view was a little, and but a little, to her starboard, as her course and position, and the direction of the river, and the line of sight to the dock distinctly show. The assumption that it was this green light which was seen on the Spray, accounts for two circumstances of no little importance, in explaining the conflict of testimony, besides disposing of the main dispute as to the course of the Comet. First, the distance at which the master of the Spray thinks he first saw the green light of the Comet. He makes it much greater than is consistent with the witnesses from the latter vessel. Now, the dock of the railroad company, where the Spicer lay, is over one third of a mile below the mouth of the river; and, of course, seeing the green light there, he would, of course, estimate the distance as greater than in fact he was from the Comet, which he did not then see. Second, it seems extraordinary, and yet is testified by the witnesses from the Spray, that the green light, which they say was the Comet's light, was first seen from half a point to a point on their starboard bow; and yet, notwithstanding, upon their theory, the two vessels were approaching each other at a combined speed of from 12 to 16 miles an hour, they observed it two or three minutes,

and it opened so little, that the captain speaks of it as "widening, if anything," and other witnesses create doubt whether it changed its bearing at all, and the utmost suggested is, that its starboard bearing reached two points. This is incredible, if it was borne by the Comet on a course crossing the bows of the Spray to the starboard enough to keep a green light in view, but is not only not extraordinary, but inevitable, if the green light was on the Spicer, lying still, and the Spray was on a course to the centre of the river, in a line very slightly varying from a direct line to that light. It is not certain that this was the mistake which they made; but their want of look out, the inattention of the officers when on duty, the actual fault in what they did, whether it was the green light of the Comet or not, and their neglect of the obvious precaution to slacken speed, prepares me for the conclusion to which the other evidence compels me, that some such mistake was made.

In what I have written I have aimed at giving an intimation of the grounds of my conclusion, rather than at discussing all the details of the testimony. No doubt, there are some of those details, not adverted to, which conflict with the conclusion. So, on the other hand, there are many other particulars, which might be stated, which go to sustain it. The counsel on both sides have presented them fully, and I have not failed, I think, to give them due consideration. To recite and discuss each in writing would involve labor which would be of no profit to counsel already familiar with the whole. For them, it might have been sufficient to state my conclusion without any reasons, and leave them to infer that I was convinced by the argument. It seemed to me just, however, to say enough to point to the prominent reasons, which, on examination and re-examination of the testimony, have forced upon me the conviction, that the Silver Spray is alone in fault, and that the libel of her owners, filed herein, should be dismissed, with costs.