## THE JOHN KING.

### HAMILTON et al. v. THE JOHN KING et al.

*(Circuit Court of Appeals, Second Circuit. December 14, 1891.)*

**1. COLLISION—MUTUAL FAULT—EVIDENCE.**

A propeller, when passing up North river opposite Eighteenth street, New York city, observed a ferry-boat leaving her slip at Twenty-Third street, sounded two blasts of her whistle to the ferry-boat, indicating her intention to cross the bows of the ferry-boat, as required by rule 1 of the supervising inspectors, and put her helm somewhat to the starboard, and, after running a short distance under her starboard helm, sounded two more blasts to the ferry-boat. The ferry-boat did not hear any of the signals of the propeller, the last of which was given when the vessels were about a quarter of a mile distant, and therefore did not respond to them as required by rule 2 of the inspectors, but, at the same time with the last signal of the propeller, blew one blast, indicating her purpose to pass to the right of the propeller. Neither vessel changed her course after the giving of these signals, un-

til too late to avoid a collision. *Held*, that the propriety of the course of the ferry-boat was to be determined by the rules of the navigation act, (Rev. St. U. S. § 4233,) and that having the propeller on her starboard side, and being entitled to keep her course as provided by rule 23, and the propeller being required by rule 19 to keep out of the way, the ferry-boat could not be held liable with the propeller for the collision that ensued, even if she had heard the signals of the propeller.

**2. SAME—CONFLICT OF LOCAL AND FEDERAL NAVIGATION RULES.**

The rule of the supervising inspectors governing navigation in New York harbor, that a steam-vessel approaching another on a crossing course, so as to endanger collision, shall signify by a blast or blasts of the whistle what course she proposes to take, cannot be held to deprive the vessel which is on the starboard side of the other of her right to keep on her course, as provided by rule 23 of the navigation act, (Rev. St. U. S. § 4233.)

**8. SAME—REVERSING ENGINES—EVIDENCE.**

Rule 21 of the navigation act (Rev. St. U. S. § 4233) provides that every steam-vessel approaching another so as to involve risk of collision shall slacken her speed, and, if necessary, reverse her engines. After the propeller signaled her intention to cross the bows of the ferry-boat, there was an interval of 30 seconds, during which the ferry-boat had a right to expect that the propeller would make the proper movement to avoid collision, by altering her course to starboard, in which case it would have been as dangerous to reverse as to go forward. *Held*, that the ferry-boat was not at fault for not reversing her engines until it was clear that the propeller did not intend to alter her course.

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Libel by David M. Hamilton and another against the ferry-boat John King and others to recover for damages to the propeller Thomas McManus, sustained in collision. Decree for libelants. Both parties appeal. Reversed.

Rev. St. U. S. § 4233, provides as follows:

"Rule 19. If two vessels under steam are crossing so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other."

"Rule 21. Every steam vessel, when approaching another vessel so as to involve risk of collision, shall slacken her speed, or, if necessary, stop and reverse."

"Rule 23. Where, by rules seventeen, nineteen, twenty, and twenty-two, one of two vessels shall keep out of the way, the other shall keep her course, subject to the qualifications of rule twenty-four."

*Peter Cantine*, for libelants.

*George Bethune Adams*, for claimants.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. The merits of this cause are involved in an irreconcilable conflict of testimony, and the only facts that are conclusively established by the proofs are that on the evening of December 5, 1888, a collision took place in the Hudson river between the propeller Thomas McManus and the ferry-boat John King, both steam-vessels; that the collision took place near the middle of the river, off below Twenty-Third street, and above Twenty-First street; that the lights of each vessel were properly set and burning; that the weather was fair and the tide was at the last of the ebb; and that before the collision both vessels were going at a speed of about 12 knots,—the McManus up the river, bound for Coxsackie, and the King across the river westwardly, preparatory to

turning to the southward, going from her slip at Twenty-Third street, bound for her slip in Jersey City. The trend of the river is nearly due north until within about half a mile below the place of collision; from Twenty-First street its trend for several miles is north-north-east, and the width of the river at the point of collision is about three-quarters of a mile.

The libel alleges, in substance, that while the McManus was proceeding about in the middle of the river, but heading a little to the westward, and when about opposite Twentieth street, she observed the John King leaving her slip, and thereupon blew two whistles to the ferry-boat; that the ferry-boat made no reply; that she then immediately blew two more whistles to the ferry-boat, and, receiving no reply, stopped her engines; that the ferry-boat kept on at full headway, and when near the McManus blew two whistles and starboarded her helm; that the McManus then blew three danger whistles; and that the ferry-boat kept on at full speed and struck the McManus abaft of midships on the starboard side. The answer, besides denying the averments of the libel, alleges in substance that, as the ferry-boat left her slip, several sailing-vessels and steam-vessels were proceeding up the river, along the New York shore; that somewhat astern of them, and a little further out in the river, the McManus was observed, bearing a little off her port bow; that her helm from the time of leaving her slip was kept to port in order to pass the vessels and the McManus; that thereupon she blew a single blast of her whistle to the McManus; that the McManus, instead of answering with a proper signal, commenced suddenly to sheer to port, directly across the course of the ferry-boat, and blew several blasts of her whistle; that thereupon the ferry-boat gave two whistles, starboarded her helm, and stopped and backed, but that the stern of the McManus swung rapidly towards the ferry-boat until her starboard quarter struck the stem or starboard bow of the ferry-boat.

Without attempting to review the evidence, we think the proofs show that the propeller was on the eastward of the middle of the river, and, in rounding the bend from Fourteenth to Twentieth streets, had swung somewhat to the eastward of the trend of the river; that, when she was about opposite Eighteenth street, she observed the ferry-boat just starting from her slip, and sounded two blasts of her steam-whistle to the ferry-boat, and shortly after put her helm somewhat to the starboard; that after she had run a short distance, and under her starboard helm had regained a course about north-north-east, she sounded two more blasts of her steam-whistle to the ferry-boat; that the ferry-boat did not hear either of those signals from the propeller; that there were several vessels going northward below, opposite and near the slip of the ferry-boat, and in leaving her slip she had to make a *detour* to the starboard to avoid some of them; that when she got out about 1,000 feet into the river, having cleared these vessels and straightened on her course to the westward, and somewhat southerly, she gave the propeller one blast of her steam-whistle; this signal was given at about the same time the second signal of the propeller was given, and the vessels were then about

1,200 or 1,400 feet apart; that the propeller did not hear the signal of the ferry-boat; that neither vessel changed her course after the giving of those signals until the propeller gave alarm signals, and slowed and stopped her engines; and that then the ferry-boat answered the alarm signals of the propeller, and immediately stopped, and reversed her engines and starboarded her helm, but the vessels were then so near that it was too late to avoid collision.

When the second signal of the propeller was given, she had the ferry-boat on her starboard hand, about a quarter of a mile away, and the vessels were on crossing courses, so as to involve risk of collision in case the propeller did not so govern her conduct as to avoid the ferry-boat. It was her duty, under sailing rule 19, to keep out of the way, and the duty of the ferry-boat, under rule 23, to keep her course. The red light of the ferry-boat was plainly visible to the propeller; and there was nothing in the way to prevent the latter from passing astern of the ferry-boat. She had concluded previously to pass across the bow of the ferry-boat, but had received no consent from the ferry-boat to such a course, and there was still time to abandon that purpose and go astern. The latter course was plainly safe, the former doubtful; and, quite irrespective of any rule of the supervising inspectors, common prudence required her to adopt the safe course, and pass astern. She cannot invoke the aid of any rule of the supervising inspectors to justify her departure from duty without showing that her proposition to depart was heard, understood, and accepted by the ferry-boat. If, by her signals, she invited a departure from the ordinary rules of navigation, she took the risk, both of her own whistles being heard, and in turn of hearing the response, if a response was made. *The St. John*, 7 Blatchf. 220; *The Milwaukee*, 1 Brown, Adm. 313. The propeller was clearly in fault.

The learned district judge from whose decision this appeal is brought, thought the first signal from the propeller was given when the two vessels were somewhat further apart than we find them to have been, and was given when the propeller was off about Fourteenth to Sixteenth street, as the ferry-boat was leaving her slip. He found both vessels in fault, and decreed a division of the loss; holding the propeller in fault for undertaking to go to the left, or across the bows of the ferry-boat, instead of to the right, or under her stern, as required by the rules of the supervising inspectors; and holding the ferry-boat in fault for not answering the first signal given by the propeller, or giving any timely signal herself to the propeller to denote her own intentions, as required by rules 1 and 2 of the inspectors.

As we understand the rules of the supervising inspectors, they mean to require steamers at all times, when passing or meeting at a distance within a half mile of one another, to give and answer signals by blasts of the steam-whistle to indicate what course they propose to take; and the signal which indicates a purpose to pass to the right of the other is one blast, and that which indicates a purpose to pass to the left of the other is two blasts; and, when the rules say the other steamer shall promptly anwer a signal, they mean that the answer shall be one which indicates her proposed

mean that the answer shall be one which indicates her proposed course. Rule 1 prescribes that the answering steamer "shall answer promptly by a similar blast of the steam-whistle." If this means that she must give a response indicating that she will conform her movements to the proposed course of the other, we think the rule transcends the authority of the inspectors. We do not mean to be understood that the inspectors may not lawfully require a steamer to give a signal to another indicating that she observes her, and proposes to perform her duty properly in passing or meeting; but the inspectors cannot lawfully require the other steamer to assent to a departure from the statute in cases covered by the rules of navigation as enacted by congress, and the inspectors' rules are not to be construed as meaning to do so. When vessels are meeting head on, or nearly so, they are under an imperative obligation to pass to the right, by the law of congress, unless some special circumstances justify a departure pursuant to rule 24; and neither can be obliged to depart from the statute at the request of the other. So, when two steam-vessels are crossing so as to involve risk of collision, the vessel which has the other on her starboard side must keep out of the way, and the other must keep her course, unless a departure is necessary pursuant to rule 24; and the vessel which is required to keep her course cannot be compelled to depart from it at the instance of the other. The rules of navigation enacted by congress are obligatory upon vessels approaching each other from the time necessity for caution begins; and from that time, as the vessels advance, so long as the means and opportunity to avoid danger of collision remain. Until the necessity for precaution begins, obviously, there can be no fault on the part of either vessel,—rules of the inspectors to the contrary notwithstanding,—of which the other can justly complain. If a proposition is given proposing a departure by one vessel, and is consented to by the other vessel, undoubtedly the former is justified in assuming that the other understands that a departure is to be attempted, and will govern herself accordingly.

With this understanding of the inspectors' rules, we cannot see that the ferry-boat was in fault. She did not answer the first signal of the propeller, because she did not hear it; and she was excusable for not hearing it, because her attention was necessarily distracted at the time by the other vessels, which she was obliged to avoid in getting out into the river from her slip. The signal she gave to the propeller when she got out into the river was the proper signal, viz., one blast, to indicate that she proposed to keep to the right. If she had heard the second signal of the propeller, she could have done no more by way of a proper answer, and would have been under no obligation to give a different signal. This signal was given at a time when there was yet opportunity for the propeller to alter her course to starboard and pass astern. If we should assume that she heard the propeller's signal, or ought to have heard it, and should have answered it by two blasts of her whistle, we do not see how the propeller was misled by the conduct of the ferry-boat. We not think, however, that, if the ferry-boat had heard the pro-

peller's signals, her failure to answer them would have been culpable. The case, in its legal aspects, is quite similar to that of *The B. B. Saunders*, 23 Blatchf. 383, 25 Fed. Rep. 727, in which the court used this language:

"Notwithstanding the inspectors' regulations, therefore, the pilot of the Saunders was not bound to assent to the movement proposed by the Orient unless due regard to the particular circumstances of the situation required a departure from the ordinary rule. Consequently, his failure to answer the signal of two blasts of the whistle from the Orient was not culpable, unless it was apparent that the Orient could not safely pass astern of the Saunders."

In the present case it was not apparent that the propeller could not pass astern of the ferry-boat, but it was apparent that she could do so.

Inasmuch as the ferry-boat knew that the propeller proposed to cross her bows, and that unless the latter changed that purpose the situation involved risk of collision, the question arises whether the ferry-boat should not have stopped and backed, in obedience to the requirements of rule 21. As the vessels were nearing each other at a speed of 2,500 feet a minute, there was but little if any more than 30 seconds between safety and collision after the second signal of the propeller. But there was still an interval, during which the ferry-boat had a right to expect that the propeller would make the proper maneuver to avoid her; and, as she could not know that the propeller would not alter her course to starboard, it would have been as perilous for the ferry-boat to stop and back as to proceed. We think that she properly delayed stopping and backing until it became obvious that the propeller was not going to clear her; and, in the short intervening distance, this was not obvious until the propeller gave the alarm signals, and then the ferry-boat did all that she could. The case is one for the application of the rule that a vessel which is primarily in fault for a collision cannot shift its consequences in part upon the other vessel, without clear proof of the contributing negligence or fault of the latter. Her own negligence sufficiently accounts for the disaster. *The Comet*, 9 Blatchf. 323.

There should be a reversal, and a decree dismissing the libel, with costs of the district court and of this appeal to be paid by the libelants. The cause is remanded, with instructions accordingly.