### THE EL RIO.

### THE MUTUAL.

### BARNEY DUMPING-BOAT CO. v. THE EL RIO and THE MUTUAL.

(District Court, S. D. New York. February 5, 1895.)

COLLISION—INSUFFICIENT LOOKOUT—TOW—LONG HAWSER.

The steamer El Rio soon after getting out of her slip on the New York shore of the North river, was obliged to reverse, whereby she narrowly escaped collision with a tug coming down near the wharves with a tow. After that danger was escaped, she started up full speed, without observing the libelant's boat, which was second in tow of the tug Mutual, going up the North river about 800 feet further out, and collision

with the libelant's boat ensued. *Held* (1) that the steamer was alone in fault for an insufficient lookout, which was not legally excused by preoccupation with the danger to the nearer tow. (2) That in the absence of regulations, hawsers of 360 and 180 feet respectively for tows in line behind the tug in the daytime in the North river were not unusual or culpable.

This was a libel by the Barney Dumping-Boat Company against the steamship El Rio and the tug Mutual to recover for damages resulting from a collision.

Carpenter & Park, for libelant.
Benedict & Benedict, for the El Rio.
Stewart & Macklin, for the Mutual.

BROWN, District Judge. In the afternoon of January 27, 1894, just after the steamship El Rio had left her slip, pier 25, North river, she came in collision with the libelant's dumper, No. 10, which was going up the North river in tow of the tug Mutual upon a hawser, inflicting damages for which the above libel was filed. The Mutual was brought in under the fifty-ninth rule.

The Mutual contends that the collision took place nearly in mid river; but I find it was much nearer the New York shore. The collision was nearly at right angles. The El Rio was a large steamer, 406 feet long. She had advanced hardly more than her length out of the slip in the ebb tide, when she was obliged to reverse her engines in order to avoid a collision with the tug Missisquoi, which was coming down river near the wharves, with a tow alongside, and which very narrowly escaped by going ahead of the steamer. When the Missisquoi had passed, the Mutual was a little above the El Rio in the river, and probably not more than 700 or 800 feet further out than the stem of the El Rio was at that time; that is, about 1,600 feet from the ends of the dock. Behind the Mutual was dumper No. 3, upon a hawser about 360 feet long. Behind No. 3 was the libelant's dumper No. 10, attached to No. 3 by a hawser of about 180 feet. After the Missisquoi had passed in front of the steamer, the latter went ahead under a full-speed jingle bell, the Mutual being observed, but the tow behind her not being at first noticed. Soon afterwards the dumpers in tow of the Mutual were observed by the mate, who called the captain's attention to them, whereupon the steamer's engine was immediately reversed at full speed. The steamer passed a little astern of the first dumper, and about midway between the two; but before she could be sufficiently backed, No. 10 came up and struck her about 40 feet from the stem. The Mutual had slackened her speed, so that No. 10 cast off her hawser before the collision.

There can be no doubt upon the evidence that at the time when the Missisquoi went clear from the steamer the latter was going at very moderate speed, and that she easily could have been stopped much before reaching the dumpers in tow of the Mutual, had they been perceived at that time. The failure to perceive them is ascribed by counsel for the defense to the excitement attending the

narrow escape of the Missisquoi, and the preoccupation of mind, and the attention of the officers to the jeopardy of the persons on board of her. However natural this may have been, I think it is impossible to accept it as a legal excuse for the lack of a proper lookout ahead before starting up full speed, so as to throw upon the dumpers the burden of the loss that would have been avoided by a proper watch on the El Rio. I am, therefore, constrained to find the El Rio in fault, without reference to the further question whether the narrow escape from collision with the Missisquoi was not also brought about by the fault of the El Rio in starting out under a signal of two whistles, when she had the Missisquoi on her starboard hand and so near to her, and thus leaving the slip at a time when immediate collision was threatened.

I do not think any legal fault in the Mutual is established. Before the collision occurred, the Mutual slackened her speed sufficiently to allow No. 10 to throw off the hawser; and the circumstances do not show that the Mutual had notice, or could have supposed that any earlier slackening of her speed was necessary. She could not foresee that the El Rio, being at a sufficient distance to avoid the boats in tow, would not keep clear of them, as it was her duty to do.

Objection is made to the length of the hawsers; but there is no established regulation upon this subject, and the evidence does not show any established custom to tow with hawsers of less length during the daytime, when the movement of the tow is in plain sight. The whole length of the tug and tow could not have been over 700 or 800 feet, which is much less than many tows continually going up and down the river.

Decree for the libelant against the El Rio, and dismissing the libel and petition as against the Mutual, with costs.