## THE FLORENCE.

## THE ELDORADO.

### CLYDE STEAMSHIP CO. v. THE FLORENCE et al.

(District Court, S. D. New York. May 2, 1895.)

COLLISION—RIGHT OF WAY—STARBOARD-HAND RULE—LEAVING DOCK—CONTRARY SIGNALS.

The large steamer E., on leaving her dock in North river, gave a signal of two whistles to the tug F., which was coming down river on the E.'s

starboard hand with a tow on a hawser. The attention of the master of the F. was then occupied with another tug which was crossing his bow, and he did not hear the E.'s signal, but soon gave to the E. a signal of one whistle, which was not heard on the E.; and the E. came in collision with the tow about 800 or 1,000 feet outside of the piers: *Held*, that the E. was alone to blame for not stopping in time, as she might have done, after the course of the F. was seen; and that the E.'s failure to get a signal in reply to her two whistles was equivalent to a dissent by the F., which held the E. bound to observe the starboard-hand rule, and go astern of the F., which had the right of way.

This was a libel by the Clyde Steamship Company, owner of the lighter Potomac, against the steam tug Florence and the steamer Eldorado, to recover damages for a collision.

Robinson, Biddle & Ward, for libelant.

. Carpenter & Park, for the Florence.

Charles H. Tweed and R. D. Benedict, for the Eldorado.

BROWN, District Judge. As the steamship Eldorado, 355 feet long, was leaving her berth on the south side of pier 25, in the afternoon of October 23, 1894, and rounding down the North river, she came in collision with the libelant's lighter Potomac, which was going down river in tow of the tug Florence, upon a hawser about 70 feet long. The collision was nearly at right angles, and from 800 to 1,000 feet off the end of the piers. The tide was the last of the flood, and the wind was light. The above libel was filed for damages to the lighter and cargo.

The Eldorado, on starting ahead, gave the long whistle required by law, which was not heard by the pilot of the Florence, whose attention was occupied probably with the Peene, a propeller which had just started from the pier below the Eldorado, and was proceeding to cross the Florence's bows, compelling the latter to slacken her speed. A shed on the pier prevented the master of the Eldorado, on starting, from seeing what was in the river above, until he had moved ahead about 150 feet. When his pilothouse had got beyond the outer end of the shed, he saw the Florence coming down on his starboard hand, and he gave her a signal of two whistles, indicating that he intended to go ahead of her. That signal also was not heard by the Florence; but soon afterwards she gave a signal of one whistle to the Eldorado, which was not heard by the latter. The Eldorado, however, soon gave another signal of two whistles, to which the Florence replied with one, which also was not heard by the Eldorado. Soon afterwards the Eldorado reversed, but too late to avoid collision.

There is some difference in the testimony as to the distance of the stern of the Eldorado from the ends of the piers when her second signal of two whistles was given. Not only the captain's testimony, however, but the weight of the other testimony, indicates that this second signal was given before the stern of the Eldorado was outside of her dock. The master of the Eldorado seems to have supposed that by giving a signal of two whistles he had the right of way, and that the Florence was bound to stop, although she was on the Eldorado's starboard hand. The requirement of the nine-

teenth article of the rules of navigation is, however, precisely opposite; and the case of The Breakwater, 155 U. S. 252, 15 Sup. Ct. 99, is a recent instance of the enforcement of that article.

I think that the blame for this collision must rest wholly with the Eldorado. The Florence, under the rules, was bound to keep her course, and the Eldorado to keep out of her way. There was abundant room for the latter to do so, had she chosen to observe the nineteenth article, and go astern of the Florence. In proposing, by her signal of two whistles, to go ahead of the Florence, contrary to the rule, "she took the risk, both of her own whistles being heard, and in turn of hearing the response, if a response was made." The St. John, 7 Blatchf. 220, Fed. Cas. No. 12,224; The Milwaukee, 1 Brown, Adm. 313, Fed. Cas. No. 9,626; The John King, 49 Fed. 472, 479. See, also, The El Rio, 66 Fed. 360. The collision· was at such a distance from the docks that it could not possibly have occurred had not the Eldorado too long persisted in her proposal, without any assent by the Florence, to go ahead of her in violation of rule 19.

I do not perceive that the Florence is chargeable with fault contributing to the collision. It is true that her master testifies that if he had observed the long whistle of the Eldorado, while he was slowed up for the Peene to pass ahead of him, he would not have gone ahead full speed, but would have waited to let the Eldorado also go ahead of him. This, however, would have been a voluntary concession. It was not obligatory. But he did not observe the Eldorado's long whistle, because preoccupied, probably, with the navigation of the Peene. The failure to hear the Eldorado's whistles was not, however, a contributing cause of the collision; because it did not mislead the Eldorado, nor give her the least apparent right to go ahead of the Florence. It was practically equivalent to an express dissent; because the Eldorado had no right to go ahead without an express assent of the Florence. It is evident, moreover, from the testimony, that the Florence had already started up before the Eldorado's pilothouse had got beyond the shed; for the master of the Eldorado makes no mention of any change in the Florence's speed, and he was in no way misled by it. When the Florence gave the Eldorado a signal of one whistle, there was abundant time for the Eldorado to keep away by reversing, and the Florence had a right to expect her to do so. The Potomac being on a hawser, it is doubtful whether the Florence could then, by reversing, have kept her tow away from the Eldorado. Whether that was so or not, the Florence was justified in relying on the duty of the Eldorado to avoid the Florence by reversing in time, as she might have done, and was bound to do.

Decree dismissing the libel as to the Florence, with costs, and against the Eldorado, with costs.