THE RELIABLE.

THE W. E. GLADWISH.

(District Court, E. D. New York. February 15, 1909.)

COLLISION (§ 95*)—STEAM VESSELS CROSSING—BOTH VESSELS IN FAULT.

A collision occurred in the North River, near the ends of the New Jersey piers, between the tug Reliable, going up with a tow, and a tow on the side of the tug Gladwish, which had just come out of a slip and had given a signal of two whistles, indicating a desire to cross ahead. Instead of going straight ahead, however, she turned up the river, and the Reliable, turning toward the shore at the same time to pass under her stern, ran into her tow. The Reliable had also given a signal of one whistle, but did not insist on her right to cross ahead, as she should have done. *Held*, that both tugs were in fault and equally liable for the injury to the tow.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200-202; Dec. Dig. § 95.*]

In Admiralty. Suit for collision.

Wray & Callaghan, for libelant.
Carpenter, Park & Symmers, for The Reliable.
James J. Macklin, for The W. E. Gladwish.

CHATFIELD, District Judge. The present accident occurred upon the North River just above the Communipaw ferries, and within a short distance of the pierheads. The tug Gladwish was coming out with a tow, and, under a flood tide, attempted to turn as nearly as possible up the river, around a pier called the "Packer Dock"; this turn being so made as to enable the tug Gladwish and the tow to barely clear a string of canal boats which were lying in three tiers, angling out from a pier to the north, known as "Game Cock Pier." The Gladwish, upon starting out, pursued a direction substantially across the river, until a point was reached where the turn to port could be made. She thus had all the boats coming up the river, along the western shore, on her starboard hand, and it was possible to see several hundred feet down the river at that point, inasmuch as there is no pier immediately to the south of the slip from which the Gladwish started. The Gladwish saw a tug with a tow, the Reliable, coming up the river some 500 or 600 feet away, past the series of Lehigh Val-

ley piers, and heading either straight up the river along the pierheads, or working closer in as if to enter the slip known as the "Morris Canal Basin." The Gladwish gave a two-whistle signal to indicate that she wished to cross the bow of the tug coming up.

It may be assumed that if the tug coming up the river, the Reliable, had gone into the Morris Canal Basin, or had stopped before reaching Game Cock pier, no accident would have occurred. The evidence would seem to show that the Reliable was out a sufficient distance when going by the Lehigh Valley piers to have passed up the river sufficiently far from the pierheads to have avoided the rule laid down by the courts in The Breakwater, 155 U. S. 252, 15 Sup. Ct. 99, 39 L. Ed. 139, and the cases therein cited. Further, the Reliable's testimony is that she blew one whistle, which would have been the proper signal if she had intended to go up the river, to prevent the Gladwish from coming out. The captain of the Reliable also testifies that before the collision he put his helm to port and tried to sheer off to avoid the collision. But this was evidently not done until too late to have been of any service, and therefore neither relieves the Reliable of any responsibility, nor would be of any importance, except that it throws some light on the position of the boats at the time of the collision.

The testimony of all the witnesses is that the blow was straight in through the side of the barge, which was lashed on the starboard side of the tug, and penetrated clear into the coal. It is reasonably certain that, if the Gladwish had succeeded in making the turn so as to be headed substantially up the river, the Reliable could not have struck such a blow on any course, unless she were headed almost at right angles for the Jersey shore. Such a blow could still less be delivered if the Reliable had turned to starboard to any appreciable extent under a port helm. On the other hand, the testimony of all the witnesses shows that the Gladwish was making a turn, and that the blow was struck after she had worked somewhat to port from a straight across the river course. It is also evident, from the position of the canal boats, angling out from the Game Cock pier, that the accident must have occurred below that pier, and not much further out in the river than the lowest tier of canal boats.

Under these circumstances it is difficult to see how the Reliable struck the barge, if her story that she was proceeding straight up the river, some 400 feet from the piers, under a one-whistle signal, with a turn to starboard, just before the accident, is to be believed. It may be assumed that the Gladwish was a crossing vessel, and that her two-whistle signal was wrong under the circumstances, especially if, instead of crossing, she intended to turn around in the path of the Reliable and proceed up the river, a maneuver which would be likely to consume more time than to pass straight across. The Reliable had the right to assume that the Gladwish heard her one whistle, or that, if the Gladwish did not hear it, no attempt to cross the bow of the Reliable would be made, under a cross-whistle, or a failure to elicit response. The John King, 49 Fed. 469, 1 C. C. A. 319; The George S. Shultz and Others, 84 Fed. 508, 28 C. C. A. 476.

But the position of the boats and the physical peculiarities of the situation show to the satisfaction of the court that the testimony of the witnesses, to the effect that the Reliable headed in, is correct. In other words, it seems to the court that the Reliable assumed that the Gladwish was proceeding straight out into the river, and, even if the Reliable gave a one-whistle signal, that after hearing the two by the Gladwish, and estimating the distance between them, the Reliable attempted to work in closer to the piers and to pass astern of the Gladwish, which, under the circumstances, she had no right to do. She should have held her course and insisted on her signal, or have proceeded at such a rate of speed that the Gladwish could have gotten out of the way. The string of canal boats was in plain sight, and the Reliable should have taken them into consideration in proceeding up the river. But the Gladwish was clearly at fault in giving a two-whistle signal, under the circumstances. She should have assumed that she would be treated as a boat coming out from a slip, and (under rule 19) thus obligated to take care of all boats approaching on the starboard; or, if she intended to have the Reliable pass up the river outside, a one-whistle signal would certainly have indicated the portion of the river which was needed by the Gladwish better than the two-whistle signal.

It is evident from the testimony of the pilot of the Gladwish that he gave the two-whistle signal because he assumed that the Reliable was going into the slip rather than up the river. Even a two-whistle signal might have been justified, if made a little later, after the Reliable had shown by her course that she would pass astern, and if the Gladwish had passed on across. But in the face of a failure to answer the two-whistle signal, which had already been given by her, and inasmuch as the Gladwish did not proceed out in the river far enough to give the Reliable room to pass astern if she had wanted to, it is difficult to see how the Gladwish can be relieved from all responsibility. When the Gladwish had once started upon her crossing course, the effect of the flood tide would increase the difficulty of avoiding the canal boats directly to the north, unless the course were pursued sufficiently to clear; and under such circumstances, even if in fault, the Gladwish might have avoided the accident by going straight out into the river; but by turning up the river she made it impossible for the accident to be prevented, unless the Reliable had consistently pursued her original course and paid no attention to the signals of the Gladwish.

While the Gladwish might have been at the outset entitled to assume that the Reliable would do this, nevertheless, after the mistakes on the Gladwish's part, and after the failure to receive the signal, it seems to be reasonably certain that the Gladwish could not ignore the difficulties caused by her own acts, and then insist that the Reliable should previously have insisted on her own rights.

The libelant is the owner of the coal barge which was run into and sunk, and both the Gladwish and Reliable seem to be responsible for the injury, and should both, therefore, be held liable equally for the damage.