## THE GWYNEDD.

### READING CO. v. SABINE TRANSP. CO., Inc.

### No. 6370.

Circuit Court of Appeals, Third Circuit.

June 23, 1937.

Henry R. Heebner and Wm. Clarke Mason, both of Philadelphia, Pa., for appellant.

Leslie C. Krusen, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and BIGGS, Circuit Judges, and DICKINSON, District Judge.

BIGGS, Circuit Judge.

The libel in this case alleged that the tug Ajax with the barge S. T. 105, as her tow, made fast to her port side, was coming down the west side of the channel of the Delaware river opposite Philadelphia with an ebb tide. While the Ajax was thus proceeding, the Gwynedd, with the loaded Car Float No. 15 fastened to her starboard side, backed out from Pier 36 upon the west side of the river. Some minutes later, at a position about opposite Pier 24, on the west side of the channel, the bow of the S. T. 105 struck the starboard side of the Car Float No. 15, causing damage to the S. T. 105 in the sum of approximately $3,000 and damage to Car Float No. 15 to the extent of about $15. The facts thus far recited seem undisputed by the parties. In respect to all other facts, however, the parties differ as strongly as the sound rules of admiralty practice seem to prescribe.

The appellant admits that its tug, Gwynedd, was guilty of negligent conduct in that it backed out with the loaded car float upon its starboard side and thereafter proceeded up the river in such fashion that the captain of the Gwynedd, his view obscured by the cars upon his float, was unable to see his course, but the appellant also urges upon us the view that the Ajax contributed equally to the disaster, and that, therefore, under the well-established rules of admiralty, the total damages to the two vessels should be averaged between them. The negligence ascribed to the Ajax by the appellant is that she failed to sound any passing signals or any other signals showing her intentions as she came upon the Gwynedd and that passing signals were required under rule III and rule IV of the Local Inspectors' Rules. The appellee for its part contends that rule III of the Local Inspectors' Rules does not apply in so far as there be any inconsistency between it and rule IV, rule IV being paramount because it is in fact article 18, rule 1, of the statutory rules, 33 U.S.C.A. § 203. This contention seems fully supported by the au-

thorities. The John King (C.C.A.) 49 F. 469, 472, 473; The Haida (D.C.) 191 F. 623, 626; The Pawnee (D.C.) 168 F. 371; The Transfer No. 15 (C.C.A.) 145 F. 503. Since the second paragraph of rule IV provides that the first paragraph thereof requiring the giving of the signals applies only to cases "where vessels are meeting end on or nearly end on, in such a manner as to involve risk of collision," it is obvious that if rule III provides that passing signals shall be given when steam vessels are in sight of each other "when passing or meeting at a distance within half a mile of each other and whether passing to the starboard or port" without limitation of the vessels being within a position of danger, that rule III and rule IV are inconsistent and that rule IV must avail. Rule III, literally construed, would require the signal to be given at one-half a mile whether or not the vessels were in a position of danger with respect to one another or not. Rule IV expressly requires a condition of "risk of collision." We do not believe, however, that rule III should be so construed as to be inconsistent with rule IV. We think that rule III applies and is intended to apply only where vessels are in a position of danger in respect to one another, and we so hold.

Applying this ruling to the facts in the case sub judice, if we accept the appellee's fact theory, namely, that the Ajax with its tow was proceeding down the western side of the channel and that the Gwynedd with its tow was so far to the east of the center line of the channel as not to be in any position of danger with respect to the Ajax; that the Gwynedd then took a sudden sheer across the course of the Ajax in such wise that the Ajax could in nowise avoid the disaster, we then see that the Ajax was not required to give a passing signal or a signal of intention and therefore cannot be charged with negligence for not doing so. The learned district judge evidently believed the Ajax' fact theory of the collision to be the correct one.

Since the testimony of the witnesses is so conflicting, all standing resolutely by their respective vessels, the trial judge had to weigh the respective stories of each and decide in favor of that theory of fact which he believed to be true. We can see no sound reason for disturbing his conclusions.

Accordingly, the decision of the court below is affirmed

DICKINSON, District Judge, took no part in the disposition of this case.