THE BALTIC.[1]

THE W. H. BEAMAN.

ALDRICH *v.* THE BALTIC AND THE W. H. BEAMAN.

(*District Court, S. D. New York.* January 24, 1890.)

COLLISION—FERRY-BOAT AND TOW—MUTUAL FAULT.

The tug W. H. Beaman, with libelant's canal-boat in tow, came around the Battery from the North to the East river, about 300 feet from the line of the piers. At the same time the ferry-boat Baltic was crossing the East river from the foot of Hamilton avenue, Brooklyn, to her slip near pier 2, East river. The vessels were visible to each other from the time the Baltic left her slip. When about 1,000 feet distant, the Baltic, leaving the Beaman ahead or on her starboard bow, blew one whistle. Getting no answer, she blew again, and ported to round into her slip. Then, seeing the Beaman starboard, the Baltic was stopped and backed. The Beaman's witnesses testified that they first saw the Baltic when she was about off the end of Governor's island, and expected that she would go astern of them. The Baltic collided with libelant's canal-boat, and sank her. *Held,* that the Beaman was in fault (1) for inattention to the signals of the Baltic; (2) in navigating too near the shore in violation of the statute of the state; (3) in not keeping out of the way of the Baltic, which was on her starboard hand. That the Baltic was also in fault for not giving sufficient attention to the Beaman, and for failing to stop and back when risk of collision was apparent, through the Beaman's attempt to cross her bows.

In Admiralty. Action for damage by collision.

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

B. D. *Silliman*, for claimant.
*Hyland & Zabriskie*, for defendant.

BROWN, J. On July 29, 1889, at about half past 8 o'clock in the morning, as the ferry-boat Baltic, upon a regular trip from Hamilton avenue, Brooklyn, was approaching her slip near pier 2 at the Battery, she came in collision with the libelant's canal-boat Moscow, loaded with coal, which was in tow of the steam-tug W. H. Beaman, upon the tug's starboard side. Both boats were nearly stopped at the time, but the blow was sufficient to cause the canal-boat to sink about half an hour afterwards. The libel was filed to recover the damages to the boat and cargo. The collision was from three to five hundred feet off the ferry-boat's slip. The tug and tow had come from Weehawken, and were bound up the East river. According to the testimony of the pilot of the tug, they had come out of the North river, keeping about 300 feet from the piers, and following the line of the shore. The tide was strong flood in the East river. The pilots of both boats say that they did not notice each other until the Beaman was about off pier 1, and the Baltic between Governor's island and Diamond reef; both estimating their distance apart, when first seen, at about a thousand feet. The Baltic was going on her usual course in the flood-tide, though there is contradiction whether off Diamond reef she slackened her speed or stopped her engine. Her chief pilot says she did not. Others testify that she did. The Beaman was coming under a slow bell. The Baltic's pilot testifies that when about a thousand feet distant he gave a signal of one whistle. This meant that he would go ahead of the Beaman. Getting no answer, he again blew one blast with his whistle when about six or seven hundred feet distant, and ported in order to make the necessary turn into her slip. He says that he then saw the Beaman starboard, which made collision likely; and that thereupon, when about 300 feet apart, he rang the bells to stop and back strong, which was done, though not in time to avoid a slight blow. The pilot of the Beaman testifies that he heard no signal from the Baltic; that when he first saw the Baltic off the east end of Governor's island, she was on his starboard bow; and that he expected that she would go astern of him.

There is too much evidence that signals were given by the Baltic to permit me to doubt that fact. That they were not heard by the Beaman when so near, I can only ascribe to inattention. Without stating further details of the testimony, three faults on the part of the pilot of the Beaman seem to me to be clear: (1) Inattention to the signals of the Baltic. (2) Proceeding near the shore, and impeding the access of the ferry-boat to her slip, instead of going further towards the middle of the river and astern of the Baltic, as required by law. Laws N. Y. 1848, c. 321; 4 Edm. St. 60; *The Maryland*, 19 Fed. Rep. 551. Most of the collisions in that region arise from this cause. (3) Having the Baltic on his starboard hand, and knowing her necessary course and swing into her slip, he did not keep out of her way, as he was bound to do. *The John S. Darcy*, 29 Fed. Rep. 644; affirmed, 38 Fed. Rep. 619.

As respects the Baltic, I cannot find that she stopped and backed as soon as she ought to have done, namely, when the risk of collision was apparent; nor can I find, upon the evidence, that such early attention was given to the Beaman and her tow as ought to have been given. Considering the much greater speed of the Baltic, there can be no doubt that the Beaman and her tow had so far rounded the Battery as to be visible to the Baltic from the time the latter left her slip, and that at that time, and for some time afterwards, they could not have been upon the port hand of the Baltic, but must have been either ahead or on her starboard bow; nor can I doubt that this relative position continued until after the Baltic had passed Diamond reef, and had ported her helm, so as to round into her slip. It was not a compliance with the rules for the Baltic to wait until within a thousand feet of the Beaman and her tow before heeding them or giving them any signal. Had the Beaman been noticed earlier, and her progress watched, it would have been plain that she was likely to embarrass the Baltic's approach to her slip, and that she threatened collision if both kept on. I have no doubt, also, that such was the evident situation at the time when the Baltic did notice the Beaman and her tow, and when she gave her first whistle, and that her whistle was given for that very reason, and not out of any mere formal compliance with the rule. The boats were already near. There was actual danger of collision, unless proper measures were immediately taken; and the fact that the Baltic received no answer from the Beaman was a sufficient notice to the Baltic that her signal and her design to go ahead were not heard and understood, or else would not be heeded, and that the Beaman was not taking the measures which she ought to take. In the situation as it actually was, and as was apparent before the second signal was given by the Baltic, there was not merely risk of collision, but almost a certainty of it, unless the Baltic should give way. The starboarding by the Beaman made little difference in her situation, and did not affect the result. But the Baltic kept on for a length after the second signal before backing, and still without any answer from the Beaman. It was the Baltic's duty, under such circumstances, to have given way earlier. The rules of navigation, and the policy of the law for the preservation of the lives and property of third persons, impose even upon the privileged vessel the duty of giving way in the presence of immediate danger of collision. Had she backed when she sounded the second signal 500 or 600 feet distant, the collision would have been avoided. For not doing this in time I must hold the Baltic also to blame. *The Columbia,* 25 Fed. Rep. 844; *The Mercedes,* 36 Fed. Rep. 602; *The Fanwood,* 28 Fed. Rep. 373; *The C. H. Seuff,* 32 Fed. Rep. 237, affirmed on appeal. Each must be held liable for half the damages and costs, and for any part thereof uncollected from the other.