Brown, District Judge.
A little after 11 o’clock on the night of October 6, 1891, the steam tug Ice King, having a barge in tow on a hawser of about 80 fathoms, in coming down the North river, after rounding Anthony’s Nose, where the river is not over 600 yards wide, came in collision with the steam tug McCaldin Brothers, which was going up the North river and was looking for a boat which she was to take out of a tow coming down. The stem of the Ice King, pointing nearly straight down river, struck the port bow of the McCaldin Brothers, which was heading probably some three or four points towards the the east shore, from the effects of which the McCaldin Brothers sank before she was able to reach the western shore of the river, and two of the crew were drowned. The first above libel was filed to recover the damages to the tug, and the owners of the Ice King subsequently filed their petition for limitation of liability, and at the same time denied that the collision was by any negligence of their tug.
Upon the conflicting testimony, I find the following facts: (1) That the tide at the time of collision was running at least two hours flood; (2) that by the understood practice of boatmen, the proper course for the McCaldin Brothers on the flood tide was near the middle of the river, leaving the easterly shore for the benefit of tugs, with tows, coming down around Anthony’s Nose; (3) that the place of collision was not more than 300 feet from the easterly shore, and not more than an eighth of a mile below Anthony’s Nose, as must be inferred not merely from the direct testimony, but from the place where the wreck was sunk on crossing the river, to wit, considerably above Anthony’s Nose; (4) that no signals were given by either boat to the other until they were within 200 or 250 yards of each other; (5) that the McCaldin’s captain and pilot were under the influence of liquor; (6) that both tugs were in a position to show each other their colored lights when over a half mile distant from each other, the McCaldin Brothers being then towards the westerly side of mid river, but working over gradually towards the easterly shore, along which the Ice King was proceeding; (7) that the McCaldin Brothers showed her green light to the red light of the Ice King, before the Ice King had got around Anthony’s Nose, but afterwards showed her green light to the green light of the Ice King, until the McCaldin Brothers, by working over to starboard and porting, showed her red light, when near the Ice King; (8) that the McCaldin Brothers was in fault for going over to the east' side of the river on the flood tide, so as to interfere with the usual course of the Ice King; she *896 probably went there to see if the boat she was in search of was in tow of the Ice King, and she was also in fault for not signaling at a proper distance; (9) that at no time when the boats were within a quarter of a mile of each other, and probably upwards of a quarter of a mile, was the green light of the McCaldin Brothers as much as a point on the starboard bow of the Ice King, as is apparent from consulting a chart of the channel of the river; and the omission of any timely signal by the McCaldin Brothers was also a violation of the inspectors’ rules.
Considering that the McCaldin Brothers is chiefly to blame for this collision, I have hesitated much in determining whether the nonobservance of the inspectors’ rules ought to be deemed a proximate cause of the collision in the present case. But I find it impossible to hold that the giving of the required signal by the Ice King would not probably have been of any use; still less, to say that it could not possibly have been of use. The Pennsylvania, 19 Wall. 125, 186; The Dentz, 29 Fed. Rep. 528.
It is clear from the testimony that the pilot of the McCaldin Brothers was navigating under a misapprehension as to the state of the tide; and that he was going over to the east shore, conceiving the tide to be ebb, where he says he would not have gone had he known the tide to be flood. A timely whistle from the Ice King, whether of one blast, or of two blasts, would have made known her intention to the McCaldin Brothers, and would naturally have tended to correct her pilot’s mistake. It cannot be said that the rules as to giving signals are not designed to correct gross mistakes, or even stupid blunders. They are prescribed for the very purpose of coming to a common understanding and of preventing mistakes, whether slight or gross. The Connecticut, 103 U. S. 710, 713; The Clara and The Reliance, 49 Fed. Rep. 765, 767, 768; The T. B. Van Houten, 50 Fed. Rep. 590; The Amos C. Barstow, Id. 623. The course of the two boats was so nearly head and head that they cannot be exempted from the operation of the rules. Even the pilot of the Ice King estimates that the distance they would have passed and cleared each other, had not the McCaldin Brothers made her sheer to starboard, as he alleges she did, would only have been some 75 to 100 feet. For some time, therefore, they must have been very nearly head and head, and the obligation to give timely signals was equally obligatory on each. I do not find that any of the cases cited by the claimants would excuse the Ice King’s omission of the signal.
I am obliged, therefore, to hold both vessels responsible, and to allow the McCaldin Brothers to recover one half her damages, not exceeding, however, the stipulated value of the Ice King and her freight in limitation of her liability, to which I find the owners entitled, or if other claims appear, her pro rata of such value.