## THE JOHN ARBUCKLE.

(Circuit Court of Appeals, Second Circuit. February 14, 1911.)

### No. 164.

COLLISION (§ 96*)—STEAM VESSELS IN CROWDED SLIP—VIOLATION OF SPECIAL CIRCUMSTANCES RULE.

A collision in a slip in North River, in the daytime, between a steam lighter going in and tug coming out, *held* due to the fault of the lighter in attempting to go in when the slip was crowded by vessels on each side, leaving but about 90 feet clear space, after, as shown by the preponderance of the testimony, the tug had sounded the slip whistle, indicating that she was coming out, which should have been heard by the lighter.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. § 96.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Lehigh Valley Transportation Company, as owner of the steam lighter Packerton, against the steam tug John Ar-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

buckle; John Arbuckle and another, claimants. Decree for libelant, and claimants appeal. Reversed.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, in favor of libelant for damages sustained from a collision between the steam lighter Packerton and the respondent's tug John Arbuckle. The District Judge held the Arbuckle solely in fault.

Wallace, Butler & Brown (J. K. Symmers, of counsel), for appellants.

Harrington, Perkins & Englar (H. S. Harrington, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The collision took place in the slip between Piers 35 and 36, North River. The slip was 600 feet long and 150 feet wide; but on the south side of Pier 36 there lay the steamship Navaho and some barges, while a similar row of barges lay at the north side of Pier 35. The consequence was that there was left a clear space only of about 90 feet for navigation of the Arbuckle and the Packerton. Each of them was about 30 feet wide. At the outer end of Pier 35 were two barges side by side, which practically extended that pier beyond the line of Pier 36. The Arbuckle was backing out of the slip, and the Packerton was entering it. Just after she entered the slip, the Packerton, according to her own story, blew two whistles, and kept towards the northerly part of the slip, subsequently blowing another two-blast whistle and thereafter an alarm whistle. All these must have been in rapid succession because the collision occurred a little more than 150 feet in from the river end of Pier 36. The Arbuckle backing naturally threw her stern towards the northerly part of the slip. There is much conflict of testimony as to what whistles were blown and what action was taken in the management of the engines of the two boats, after the Packerton turned into the slip. Indeed, as the District Judge says:

"This is apparently one of those cases where both vessels are backing away from each other and come into collision."

He held the Arbuckle in fault because in backing out she got over to the northerly side of the slip where the Packerton had gone, when there was plenty of room for her to get out on the other side of the slip.

In our opinion, however, the primary cause of the collision lies further back. All agree that the ordinary rules of navigation in open water as to signals and helm movements do not apply in such a constricted space as this was. It is a case to be governed by the "special circumstance" rule. It was imprudent navigation on the part of both these boats to be proceeding at the same time, the one in and the other out of this crowded slip. Whichever vessel is in fault for bringing about this state of affairs should be held responsible for all the consequences; both of them should be held if both contributed to produce such conditions. The rules provide a simple method for preventing

185 F.—16

just such a condition. When a vessel, located at rest in a slip, has cast off and is about to start out of the slip bow-first or stern-first, it is her duty to blow a long single blast, usually spoken of as a "slip whistle." This is a warning to vessels passing up and down across the mouth of the slip and to those about to enter it that a vessel is coming out. Hearing such a whistle, it is their duty, unless they are privileged, to regulate their own movements so as not to interfere with the exit of the other vessel from the slip. The Packerton was not a ferryboat, and certainly was not privileged to thrust herself into the mouth of the slip at the moment when she was advised that some other vessel was coming out. If she heard the whistle and, disregarding it, hurried into the slip instead of waiting, as she could easily have done, till the Arbuckle came out, or if she kept on because she did not hear a timely warning, which if attentive she might have heard, she would be in fault. If, on the other hand, the Arbuckle failed to sound a slip whistle when she cast off, or if the whistle were sounded so feebly as not to be heard beyond the mouth of the slip, the initial fault would be hers. The testimony bearing on this branch of the case may next be examined.

The Arbuckle had brought a large barge into the slip, which was left against Pier 36 in front of the Clyde Line steamer Navaho, which lay up towards the bulkhead end bow out. She then went over to the south side of the slip and tied up to a barge which lay alongside of Pier 35, while the mate went ashore to telephone for orders. This barge was the second one in from the river end of the pier. The master of the Arbuckle stated that, upon the return of the mate, he let go his line, sent his mate aft, and started to back out, blowing a slip whistle. While he was backing the mate sang out to go ahead (reverse), whereupon he stepped across to the starboard side of his pilot house, looked out, and saw the Packerton coming across the end of Pier 35. He stated that the Arbuckle had a good loud whistle and that he blew it five or six seconds. The mate testified that the whistle was blown as he threw the line off. That they had backed some distance before he sighted the Packerton coming up against the tide around the barges at the end of Pier 35—he says that they had backed about 90 feet, which is probably an exaggeration. The deck hand who was standing aft alongside of the mate testified that as the Arbuckle cast off her line and started to back they blew the general slip whistle, a long blast, and that they had backed about half the length of the boat when he saw the starboard bow of the Packerton coming up alongside of the lighters at the end of Pier 35 and rounding into the slip. The engineer says that at the time he started to back he heard the slip whistle. The steward says that the whistle blew when the line was cast off. The fireman who was below testified that he heard some whistles, but could not say as to a slip whistle, because he does not understand the whistles.

Ryberg was acting captain of the lighter Barton, which lay against Pier 36, nearest to the river end. He saw the Arbuckle come into the slip and then occupied himself, making his own boat fast; this was 20 minutes to half an hour before the collision. His attention was drawn to the Packerton when she was just in the mouth of the slip. As she

came over towards him she blew a two-whistle signal. At this time he looked up the slip and saw the Arbuckle backing out; did not know where she started from. He states what whistles were blown after this first signal of the Packerton attracted his attention and says that the whistle the Arbuckle blew just before collision was the first one he had heard from her. Since he was not engaged in navigation, or concerned with the movements of any other vessels until after he sighted the Packerton in the slip, the circumstance that he heard no slip whistle from the Arbuckle when she started is not significant. One may have been blown which he did not notice.

Boucher was employed by the Savannah Line and was on Pier 35. His attention was called by the Packerton's two whistles, blown when she was almost in the slip. He then looked and saw the Arbuckle backing down. He says he heard no earlier whistle from the latter; but the same comment may be made as in the case of Ryberg: There was nothing to induce him to heed or remember whistles if he heard them, until his attention was called to the situation by the entry of the Packerton into the slip evidently signalling to some one.

Of the crew of the Packerton, two deck hands were working inside, and do not know about any whistles—the engineer was not asked about them. The master of the Packerton testified that he came down the river from Pier 55, running about 12 miles an hour with an ebb tide and about 400 feet off the piers. When he got about abreast of the slip, he rounded to coming nearer, about 200 feet off the pier line. As he rounded to he could see into the slip and then saw the Arbuckle lying about two-thirds of the way up the slip on the south side about abreast of the bow of a Clyde Line steamer (the Navaho), lying still apparently alongside of one of the barges. He slowed down as he rounded to, and as he entered the slip noticed that the Arbuckle had sternway on her. Apparently she had cast off and started between the time he saw her as he rounded to and the time when he entered the mouth of the slip, coming up against the tide and around the barges at the end of Pier 35. This witness testified that he heard no whistle from the Arbuckle as she started out, no whistle whatever, although he was keeping a sharp lookout. The mate of the Packerton, who was in the pilot house with the master, substantially corroborates this testimony.

In view of this conflict of evidence, it is fortunate that we have the testimony of a disinterested witness, who was at the time giving his attention to signals. Nickelsen, a licensed engineer and master, was coming down the river about 400 or 500 feet off the piers in a gasoline launch, with another man, who was steering. He testified that when he was about abreast of Pier 37 he heard a long blast, to which he at once gave attention, because he "always pays attention to a slip whistle." It was from a slip close by, and he told the man that was steering the boat to keep clear of the slip, because there was a ship coming out. As he got a little further down he saw a steam lighter coming around Pier 35. There were a couple of lighters lying there, and she was heading towards Pier 36, bucking the tide so that it looked as if she was coming up the river. As he passed down he saw in the slip the Navaho, with which he was familiar. He heard a lot of subse-

quent tooting and the crash. In our opinion this testimony so strongly corroborates the testimony of the master and crew of the Arbuckle that they blew a slip whistle before the Packerton came into the slip that we must accept their statement to that effect as correct. Since their whistle was plainly heard by an observer 400 or 500 feet off Pier 37, it should have been heard by those on the Packerton, who were near the mouth of the slip, and their navigation must be judged as if they had heard it.

As was said before, we think the initial and controlling fault was the intrusion of the lighter into the slip after the tug had notified her intention of coming out. The former should have held herself against the tide till the departing vessel had left the slip.

The decree is reversed, with costs, and cause remanded, with instructions to dismiss the libel, with costs.