## THE TEXAS.

### THE GEORGE W. TRUITT.

(Circuit Court of Appeals, Second Circuit.   May 13, 1912.)

Nos. 221, 222.

1. COLLISION (§ 95*)—STEAMER AND TUG WITH TOW—VIOLATION OF CROSSING RULES.

The schooner Truitt, while being towed stern first on the port side of the tug Hoffman from Jersey City to the Stapleton Anchorage, came into collision with the steamship Texas, which was proceeding from the anchorage up the Bay. They were on crossing courses; the tug and tow being the burdened and the steamer the privileged vessel. It was hazy, but the vessels could see each other for at least five minutes before the collision. The tug signaled twice with two whistles, and persisted in her course, although she received no answer. The Texas ported, and continued to port almost to the time of collision. Held, that the tug was in fault for persisting in her attempt to cross ahead of the steamer in violation of the rules, and that the Texas was in fault for not keeping her course and speed as required by the rules.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collisions with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

2. COLLISION (§ 95*)—NEGLIGENCE—TOWING VESSEL STERN FIRST.

Towing a vessel stern first in New York Bay, while unusual, is not unlawful, and does not render the tug liable for a collision, unless the other vessel was in fact misled as to her course.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by George W. Elzey as master of the schooner George W. Truitt, and the Atlantic Mutual Insurance Company, petitioners, against the steamship Texas, the Scandinavian-American Line, claimant, and the tug Maria Hoffman, Wilbur C. Fisk, claimant, and cross-libel by the claimant of the steamship against

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the other vessels. Decree against the tug Hoffman alone, and libelant and cross-libelant both appeal. Modified and affirmed.

For opinion below, see 192 Fed. 233.

Haight, Sanford & Smith (Edward R. Baird, Jr., and John W. Griffin, of counsel), for the schooner.

Carter, Ledyard & Milburn (Walter F. Taylor, of counsel), for the cargo.

Carpenter & Park (Samuel Park, of counsel), for the steam tug.

Burlingham, Montgomery & Beecher (Charles C. Burlingham, of counsel), for the Texas.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. [1] January 14, 1911, the tug Maria Hoffman took the schooner George W. Truitt laden with cement at Communipaw in tow on her port bow for the purpose of towing her stern first to the anchorage grounds at Stapleton. At 12:45 p. m. the steamer Texas, then lying opposite Stapleton, weighed her anchor and proceeded on her voyage to New York. At this time the tow and steamer were a nautical mile apart. The tide was ebb. At a point on the eastern side of the channel a little north and west of the Bay Ridge bell buoy 12½, they came into collision at almost a right angle. The stem of the Texas struck the port bow of the Truitt, about 50 feet aft of her stem, and the Truitt, swinging around on the starboard side of the Texas twisted her stem to starboard. Immediately before the collision the tug Hoffman had thrown off her lines and backed away from the schooner. Otherwise she, instead of the schooner, would have been in collision. At the same time the Texas went full speed astern on her engines.

There had been a light fog that morning, but there was not enough for some 10 minutes or so before the collision to be of any consequence. None of the vessels involved or in the neighborhood was blowing fog signals. We agree with the district judge that objects could be seen for at least three-quarters of a mile. The combined speed of the steamer and tow was not over eight miles, so that there were at least five minutes in which to navigate in sight of each other. Indeed, the testimony on behalf of the steamer, read in connection with the entries in her engine room log, show that she saw the tug and tow more than five minutes before the collision. We also agree with the district judge that the vessels were on crossing courses from the moment the Texas got fairly under way from her anchorage; the tug and tow being the burdened and the steamer the privileged vessel. Those in charge of the navigation of the Texas ported and continued to port from the time they saw the tug and tow down to almost the moment of collision. This was a plain violation of the steering rules. They explained it by saying they supposed the schooner was going up the Bay, or that the tug was backing to the westward and southward with the intention of bringing her bow down and then proceeding on a hawser. Therefore, thinking the situation absolutely safe, they ported, as they say, to go under her stern and turned their

attention to some tugs which were towing the steamer Neidenfels on a hawser from Bay Ridge toward Kill von Kull under whose stern they also intended to go. During this considerable period the tug and tow kept persistently on a course across the steamer's, although they say two signals which they gave of two whistles each were not answered by the steamer.

[2] The district judge held the tug at fault for persisting in her intention to cross the steamer's bows. We concur with him in this. He also held her at fault for towing the schooner stern first and discharged the steamer on the ground that she was misled into supposing that the schooner was going away instead of approaching her course. In this conclusion we cannot agree. Towing a vessel stern first, while unusual, except for some necessity which did not exist in this case, cannot be said to be unlawful. Such a proceeding may impose more than usual care on the tug and may excuse a vessel which is misled by the appearance into a sudden error. But surely no one could be heard to say that he had been led into error by such a circumstance in broad daylight with abundant time for observation and water for navigation. It is impossible that those in charge of the Texas could have been misled if they had watched the schooner with the tug at her port bow towing her down the Bay stern first at a speed of four knots an hour. If nothing else, the fact that the vessels could run for several minutes without material change of bearing would show the constantly increasing danger of collision. As they altered their course from N. E. by N. to E. by N. before the collision and then needed only 50 feet to the northward to go clear, it is plain there would have been no collision if they had held their couse and speed as required by law.

The decree is modified and the court below directed to enter a decree for the owners of the George W. Truitt and her cargo against the claimants of the steamer Texas, and the owners of the tug Maria Hoffman to the agreed value of their interest in the said tug and their pending freight with interest and costs and dismissing the Scandinavian-American Line against the schooner George W. Truitt, with costs.