# THE DAUNTLESS.

## MEARS TOWING CO., Inc., v. DAUNTLESS TOWING LINE, Inc.

(Circuit Court of Appeals, Second Circuit. November 21, 1924.)

No. 90.

**1. Collision ⬤➞90—Buttermilk Channel is a "narrow channel."**

Buttermilk Channel is a "narrow channel," within Inland Rules, art. 25 (Comp. St. § 7864), requiring steam vessels to keep to the starboard side of narrow channels.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Narrow Channel.]

**2. Collision ⬤➞95(4)—Tug held solely in fault for collision for violation of rules.**

A collision in Buttermilk Channel between the tug Mears, passing down within 400 feet of the Brooklyn piers, and a barge alongside of the tug Dauntless, passing up, the two tugs meeting head and head, *held* due solely to the fault of the Mears for violating Inland Rules, art. 25 (Comp. St. § 7864), in being on the wrong side of the channel and in attempting to pass starboard to starboard, without agreement with the Dauntless and after the latter had signaled for passing port to port.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty for collision by the Mears Towing Company, Inc., owner of the steam tug Gertrude B. Mears, against the steam tug Dauntless, the Dauntless Towing Line, Inc., claimant. Decree for libelant, and claimant appeals. Reversed, with directions.

Barry, Wainwright, Thacher & Symmers, of New York City (Earle Farwell, of New York City, of counsel), for appellant.

Frederick W. Park, of New York City, for appellee.

Before HOUGH and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge. After leaving the foot of Sackett street, Brooklyn, at 7:15 a. m., October 28, 1922, the Mears made her course for Pier 2, Erie Basin, and while proceeding down Buttermilk Channel, running light on the last of the ebb tide, she came into collision with a barge, which was fastened on the starboard side of the Dauntless. This caused injury to the Mears and gives rise to this libel. It is alleged in the libel, and the libelant sought to sustain the allegation, that the vessels approached each other starboard to starboard; that the Dauntless sounded a signal of two whistles; and that when approximately two boat lengths from the Mears the Dauntless sheered sharply to starboard and blew a signal of one whistle. Other faults alleged are that the Dauntless failed to properly answer the signal of the Mears, and when she did answer she crossed signals without the necessity therefor; that she did not hold her course and pass at a safe distance from the Mears; that she had no lookout upon the scow; that she failed to comply with the regulations governing the maneuvers of the vessels in such quarters. The District Court sustained the libel and awarded damages by its decree.

[1, 2] The Mears was proceeding about 400 feet from the Brooklyn piers which were at her port hand. In these waters the channels are narrow channels. Article 25 of the Inland Rules applies. In The Sif, 266 F. 166, we held that the Bayridge Channel, which is the southern continuation of Red Hook Channel, was a narrow channel, under article 25 of the Inland Regulations. In these waters and at this point the Mears was violating this statutory regulation of the Inland Rules (U. S. Compiled Statutes, § 7864), which provides:

"In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel."

The course which the Mears took brought about a meeting of the vessels substantially head and head, although each was slightly to the port of the other. The Dauntless was properly navigating between 300 feet and 400 feet off the Brooklyn shore. The captain of the Mears in his testimony admitted a meeting of substantially head and head. He testified:

"Q. Who blew the whistle? A. The cook.
"Q. Who ordered him to blow the whistle? A. I did.

"Q. Just what did you do? A. I saw that we could pass on either side of him, and blew two whistles to go on the starboard side."

The engineer of the Mears testified that he saw the vessels immediately before the collision, and that they were approaching head and head. Thus there was a violation of this navigating rule. The Victory, 168 U. S. 410, 18 S. Ct. 149, 42 L. Ed. 519; The Amolco (C. C. A.) 283 F. 890. There were no special circumstances that required the Mears to depart from the rule of keeping to the right. Even though the Mears blew two whistles, she would require the assent of the Dauntless before she would be justified in navigating as she did. The John King, 49 F. 469, 1 C. C. A. 319. In the absence of such consent, it was her duty to pass port to port. The Friesland (D. C.) 76 F. 593. The captain of the Mears admitted that he blew a whistle and starboarded over toward Brooklyn, but in no way claimed that he received an assent from the Dauntless for such passage. He thus altered his course to port, and this we regard as a fault which brought about the collision.

It also appears that the navigation of the tug was in charge of a cook, not a licensed man, whose experience or qualifications for navigation is doubted. The master said that he turned the navigation over to this cook temporarily while he was changing his clothing. This cook testified that he took the Mears from Sackett street, Brooklyn, and headed down toward Buttermilk Channel, and on seeing the Dauntless approaching him from the opposite direction observed: "I figured that he wanted to pass on our starboard side and sheered toward the Brooklyn shore." In this assumption of the intention of the oncoming tug and the resulting maneuver, he brought the vessels in a position of head and head. After the Mears sheered, as the cook admitted, the Dauntless blew one whistle, whereupon the Mears' navigator put his helm to port and endeavored to swing the other way. It was at this point that the captain of the Mears took the wheel from him, but it was too late to avoid the collision.

We regard the Dauntless as free from fault. She was observing the rules and navigating accordingly. She gave one whistle signal before any signal from the Mears, and this should have been heard on the Mears, if they were attentive. If the Mears blew a signal of two whistles, it was after

the first signal whistle, and this was cross-signaling. Had the Dauntless' signal been observed, the collision would have been avoided. The Dauntless had a deck hand who was acting as lookout on the bow, which was his proper position.

The decree is reversed, with directions to the District Court to dismiss the libel, with costs.

Decree reversed.