## STANDARD OIL CO. v. SHIPOWNERS' & MERCHANTS' TUGBOAT CO.

### SAME v. UNITED STATES et al.

(Circuit Court of Appeals, Ninth Circuit. January 31, 1927.)

### No. 4869.

1. **Appeal and error** ⊜⟶1008(1)—**Appellate court will not disturb finding of fact on testimony of witnesses except for manifest error.**

Finding of fact made on testimony of witnesses taken before the court will not be disturbed by appellate court except for manifest error.

2. **Collision** ⊜⟶105(6)—**Evidence held to show collision was result of faulty navigation on part of tow.**

Evidence *held* to sustain lower court's finding that collision was result of faulty navigation on part of captain of steamship being towed through channel when maneuvering his ship around turn therein.

3. **Collision** ⊜⟶95(2)—**Tugboat held not at fault in cutting towline to escape being dragged into collision.**

Tugboat *held* not at fault in cutting towline in order to escape being dragged into collision and probably crushed between tow and other ship.

4. **Towage** ⊜⟶4—**Tug is not insurer of safe delivery of tow, its obligation being only that it shall be reasonably adequate for service undertaken.**

Tug owner impliedly undertakes to furnish vessel of sufficient capacity and power for performance of contemplated service, but tug is not insurer of safe delivery of tow; obligation imposed on it by law being only that it should be reasonably adequate for service undertaken.

5. **Collision** ⊜⟶104—**Tow has burden of showing tug was negligent.**

Burden of proof rests upon tow to show that tug was negligent.

6. **Collision** ⊜⟶95(2)—**Question of tug's adequacy is practical one of reasonable sufficiency for particular trip.**

Question of whether tug is adequate is a practical one of reasonable sufficiency for particular trip in judgment of skillful and prudent navigators.

7. **Collision** ⊜⟶95(2)—**Tug held not to have lacked sufficient power for towing vessel which it had towed through channel before.**

Where towage contract was entered into with knowledge of comparative weights of two vessels and horse power of each and tug had taken tow through channel before several times, it will not be *held* that tug lacked sufficient power for towage purposes.

Appeals from the District Court of the United States for the Southern Division of the Northern District of California; Adolphus F. St. Sure, Judge.

Separate libels by the Standard Oil Company against the American steam tug Fear-

less, her boilers, engines, tackle, apparel, furniture, etc., the Shipowners' & Merchants' Tugboat Company, claimant, and by the United States against the Standard Oil Company, claimant of the steamship S. C. T. Dodd, and the Shipowners' & Merchants' Tugboat Company, claimant of the steam tug Fearless, her boilers, engines, tackle, apparel, furniture, etc., wherein respondent first named filed a cross-libel against the libelant and the respondent last named, which libels were consolidated for trial in the lower court. Judgment in favor of the United States against the Standard Oil Company, and the Standard Oil Company appeals. Affirmed.

The appellant's steamship Dodd, laden with oil, the combined weight of vessel and cargo being 15,000 tons, employed the tug Fearless, belonging to the appellee the Shipowners' & Merchants' Tugboat Company, to assist her from her dock in San Pedro Harbor through the channel into the outer harbor and on her way to the sea. While proceeding in the channel under her own steam, with the towline attached to her port bow, as her master had directed, the Dodd, in attempting to make the necessary right angle turn to port near Buoy No. 3, got out of the fairway and into the naval anchorage and collided with the battleship New Mexico, which was lying at anchor, resulting in injury to both the Dodd and the battleship. The libel of the appellant against the Fearless, the libel of the United States against both the tug and the tow and their owners, and the cross-libel of the appellant against the United States and the tug and her owner, presented the issues which were consolidated for trial in the court below; the United States claiming that the battleship was in proper anchorage ground, properly lighted, and without fault; the appellant claiming that the battleship was so placed as to be a hindrance to navigation, and that the collision was caused by the act of the tug in letting go her line at a time when further pulling would have prevented the collision; the owner of the tug claiming that the Dodd was at fault and caused the collision by her failure to slow her speed or stop for the turning maneuver and by continuing on her course into the naval anchorage, dragging the tug into irons and necessitating the cutting of the tow line, notwithstanding the efforts of the tug to pull her around and head her for the sea.

All the testimony was heard before the trial court, and the view of the court thereon was expressed in an opinion in which consideration was given to the fact that the weight of the Dodd with her cargo was 15,000 tons and her engines had 3,000 horse power, while the tug weighed 500 tons and was equipped with engines of 600 horse power, and the conclusion was reached that at the time when the captain of the Dodd was attempting to maneuver his ship around the turn in the channel a perilous situation for the tug and its occupants was presented, and that the tug was being dragged by the Dodd. Said the court: "There is evidence that the Fearless was in such position at the time that had the line not been cut she would have been dragged into a position where lives might have been snuffed out as a result of the situation, and the tug perhaps destroyed. The contention of the Standard Oil Company appears to be that the tug is to blame because she did not hold on long enough. The evidence convinces me that the tug held on as long as she could and as long as it was reasonable that she should hold on. I think it may be fairly said, from the testimony of the witnesses on behalf of the Standard Oil Company, that the most that those witnesses can say for the situation which was presented at the time of the collision, was that in their opinion, or rather that it was their opinion that, if the tug had held on they would have got by the battleship without collision. Therefore, it appears to me from the evidence that while the captain of the Dodd was attempting to navigate or maneuver his ship around the turn, he so navigated his vessel as to bring about the damage which resulted to the New Mexico." A judgment was rendered in favor of the United States and against the Standard Oil Company for the damages to the New Mexico in the sum of $3,571.12.

Pillsbury, Madison & Sutro, and Felix T. Smith, all of San Francisco, Cal., for appellant.

Thacher & Wright, of San Francisco, Cal. (Thomas A. Thacher, Harrison A. Jones, and W. K. Casey, all of San Francisco, Cal., of counsel), for appellee Tugboat Co.

Geo. J. Hatfield, U. S. Atty., and Frank Maytham, Asst. U. S. Atty., both of San Francisco, Cal., for the United States.

Before GILBERT and RUDKIN, Circuit Judges, and JAMES, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] The trial court found that the collision was the result of faulty navigation upon the part of the captain of the Dodd in maneuvering his ship around the turn in the channel. Notwithstanding the

well-settled rule that a finding of fact so made upon the testimony of witnesses taken before the court will not be disturbed by an appellate court except for manifest error, the appellant contends that here the rule does not apply for the reason that there was no evidence whatever to show negligence on the part of the officers of the Dodd. We do not so read the record. We accept it as an established fact not only upon the finding of the court below, but upon the evidence in the case, that the battleship was properly anchored with proper anchor lights burning and within the naval anchorage ground, well off the deep-water channel, leaving ample passage clearance for vessels, so that the question of the blame for the collision must rest between the Dodd and the tug. We find evidence tending to sustain the finding of the court below that the collision was the result of faulty navigation, in that the Dodd failed to reduce her speed as she approached the point where the channel makes the turn. The testimony of expert navigators was to the effect that the safer and better practice would have been to bring the Dodd practically to a stop, or at least to a speed not to exceed a knot and a half, and to permit the tug to pull her bow around. The appellant contends that the speed of the Dodd was not to exceed three or four knots, but the evidence of her master as to the time when she passed Beacon No. 2 and the time of the collision would seem to indicate that the average speed was more than five knots. The master of the tug testified that the Dodd made a belated turn and made too much speed, a speed which he said was about seven knots. The commander of the New Mexico, an experienced navigator who was called as a witness for the appellant, testified that "the key to going around that point out there is to go very slowly, very slowly, and be able to back your engines, back on one or go ahead on the other, to twist your ship." The mate of the tug testified that the Dodd should have been slowed down to a knot and a half, and the master of the tug testified that the Dodd should have been brought practically to a standstill. In brief, the evidence tended to show that had the speed been properly reduced the collision would have been avoided.

[3] Nor do we find ground to question the finding of the trial court that the tug was not in fault in cutting, as she did, the towline. The evidence tends strongly to the conclusion that but for the severing of the line the tug would have been dragged into the collision and probably crushed between the battleship and the Dodd, with possible loss of life.

[4-7] In the appellant's libel against the owners of the tug and in its answer to the libel of the United States, the only fault it charged against the tug was that she negligently and carelessly drove the steamship into collision with the battleship. On the trial in the court below counsel for the appellant in his opening statement said: "The final cause of the damage was undoubtedly the towboat letting go, which put the Dodd in a position where the collision was unavoidable." The same view was taken of the cause of the collision in the appellant's petition for rehearing, in which it was said that the real question before the court was whether at the time when the towline was dropped the tug was justified in dropping it. On the appeal the contention is made for the first time that the tug lacked sufficient power for the towage service. Undoubtedly a tug owner impliedly undertakes to furnish a vessel of sufficient capacity and power for the performance of the contemplated service under ordinary conditions. The E. T. Williams (D. C.) 126 F. 871. But a tug is not an insurer of the safe delivery of the tow. The obligation imposed on it by law is that it shall be reasonably adequate to the service undertaken, The Startle (C. C.) 115 F. 555, and the burden of proofs rests upon the tow to show that the tug was negligent, The L. P. Dayton, 120 U. S. 337, 351, 7 S. Ct. 568, 30 L. Ed. 669. As regards the adequacy of the tug, the question is a practical one of reasonable sufficiency for the particular trip, in the judgment of skillful and prudent navigators. Said Judge Brown in The Allie & Evie (D. C.) 24 F. 745: "There is no other final criterion than the judgment of practical men versed in the business and the customs and usages of the time and place, viewed as representing the judgment and knowledge of the time." The fact itself that the towage contract here was entered into was, in view of the knowledge and experience of both the parties thereto, evidence that in the judgment of practical men, versed in the business, the tug was regarded as possessed of sufficient power for the service contemplated. They knew the comparative weights of the two vessels and the horse power of each. The tug had taken the Dodd through the channel "several times." The officers of the Dodd were familiar with the harbor and the channel. Her captain had been sailing regularly in and out of the harbor for the "last five years." The chief officer had made the turn in the channel "100 times or more." They must have known also the momentum of their own vessel when under way. Nowhere in the record is the capac-

ity of the tug brought in question. It seems to have been assumed by all the witnesses that the tug was capable of performing the service which she undertook. We find no merit in the contention.

The decree is affirmed.