CHESTER A. POLING, Inc., v. UNITED STATES.

No. 198.

Circuit Court of Appeals, Second Circuit.

Feb. 8, 1932.

William F. Purdy, of New York City (John E. Purdy, of New York City, of counsel), for appellant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Charles E. Wythe, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The collision occurred in the vicinity of Throgg's Neck at the entrance to Long Island Sound, shortly after 5 a. m. on October 30, 1929. The Poling Bros. was bound eastward and the Trippe westward, with the tide against her. While the Poling Bros. was still in the East River, the commander of the

Trippe observed across the lowland of Throgg's Neck her red running light. This indicated to him that the Poling Bros. was proceeding eastward into the Sound and would turn to port to round the buoy off the point of Throgg's Neck. She rounded the buoy at a distance of about 75 feet, and in making this maneuver opened up her green light, showing both red and green to the Trippe, whose engines had previously been stopped until her commander should see whether the lighter intended to pass to port or to starboard. The lighter continued to swing to the left until only her green light was visible. Thereupon the Trippe's engines were put ahead, but at practically the same moment the Poling Bros. swung back to her starboard until only her red light was visible. The Trippe's engines were immediately reversed at two-thirds speed and her rudder put hard right in an attempt to pass under the Poling Bros.' stern, but the effort failed. The bow of the Trippe struck about six feet from the lighter's stern and caused such damage as necessitated beaching the Poling Bros. Neither vessel had blown any signal. The District Court held the Poling Bros. solely at fault for altering her course without signal.

■ Upon this appeal the libelant makes no attempt to excuse the Poling Bros., but contends only that the Trippe was also at fault, and that damages should be divided. The position is well taken. It is conceded that the course, though not the headings, of the vessels were head and head, or nearly so. In this situation, rule IV of the Inland Rules applies, and makes it the duty of each vessel to pass on the port side of the other. The rule further provides that "either · vessel" shall signal her intention. Had a passing agreement been reached, the collision at bar would have been avoided. When the Trippe stopped her engines to see what the lighter intended to do, it would have been possible to pass on either side. Instead of reaching an agreement by signals, each navigator attempted to divine the intention of the other. This has so often been held a mutual fault that the citation of authorities seems almost superfluous. See The Ice King, 52 F. 894, 896 (D. C. S. D. N. Y.); The Transfer No. 4, 61 F. 364 (C. C. A. 2); The Mercer, 234 F. 259, 262 (C. C. A. 2); A. H. Bull S. S. Co. v. United States, 34 F.(2d) 614, 616 (C. C. A. 2). The appellee argues that rule IV does not apply because the Poling Bros. had swung so far to port that only her green light was visible when the Trippe's engines were put ahead. But the vessels had begun to navigate with reference to each other long before this, and admittedly the Trippe's commander stopped his engines while he was trying to ascertain what the Poling Bros. intended to do. He says that "for a moment I saw just her green light," and thereupon, thinking he had divined her intention to pass to starboard, he went ahead. The passing agreement should have been reached prior to this; then commander Buckalew would have not had to guess as to the Poling Bros.' intended course. As this court said in The Bilbster, 6 F.(2d) 954, 956, "A vessel is not entitled to assume that another vessel will pass her starboard to starboard until two whistles are blown and answered."

It is unnecessary to consider other charges of fault which each vessel asserts against the other.

The decree of dismissal must be reversed, and a decree entered holding the respondent liable for one-half the libelant's damages.