### THE D. S. DUMPER NO. 305.
### THE CITY OF TOKIO.
### THE HENRY W. CARD.
#### No. 403.

Circuit Court of Appeals, Second Circuit.
May 6, 1935.

316

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and A. V. Cherbonnier, both of New York City, of counsel), for appellant-claimant of steamship City of Tokio.

Foley & Martin, of New York City (James A. Martin and Christopher E. Heckman, both of New York City, of counsel), for appellant-claimant of Henry W. Card.

Paul Windels, Corp. Counsel, of New York City (P. Fearson Shortridge and Willard M. L. Robinson, both of New York City, of counsel), for libelant-appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

### AUGUSTUS N. HAND, Circuit Judge.

About 7 p. m. on the evening of April 13, 1933, the steamship City of Tokio was proceeding down the center of the Bay Ridge Channel, bound for sea. The tug Du Bois was coming up along the west side of the channel, some 200 feet to the westward of the course of the Tokio. When the Du Bois was about three-quarters of a mile below the Tokio, the latter blew a two-blast signal and swung a little to port. This the Du Bois answered by two blasts. The steamship erroneously assumed that the signal was given by the tug Card and swung a little further to port in order to pass the Card on the starboard side. The Card was coming up about on a line with the course of the Tokio and about 400 feet astern of the Du Bois and had in tow three dump scows owned by the City of New York, one No. 310 on her port side, No. 305 astern of No. 310, and No. 205 on her starboard side. She did not answer the two blasts from the Tokio, but kept straight on at full speed for one or two minutes and then, when less than 1,200 feet from the Tokio, started to round toward the Brooklyn shore, where she was going to dock at Sixty-Ninth street, and blew one blast to the steamship. The latter did not assent to this signal, though the Card twice repeated it, but blew an alarm, stopped her engines, put them in reverse, and gave orders to let go her starboard anchor. The Tokio had been going ahead at full speed and, by the time she saw the tug start to swing toward Brooklyn, was only about 700 or 800 feet from the Card. As the Card rounded toward her pier, the flood tide swung Dumper Scow No. 305, which tailed behind the tug's port barge, athwart stream and across the course of the Tokio. The steamship Tokio had relied on the assumption that the Card, rather than the Du Bois, had given the answer to her two whistles and had kept going at full speed and had done nothing either to check her headway or to go to starboard, until it was too late to avert a collision. In spite of her final attempt to prevent disaster, she collided with No. 305 and sank her somewhere to the east of the center of the channel and probably about 700 feet off the Brooklyn shore.

The foregoing summary represents the findings of the District Court and is based upon substantial evidence. Both the Tokio and the Card were held at fault—the Tokio because she improperly assumed that the answer to her two-blast signal came from the Card and proceeded at full speed without seeing to it that she had an answer from both vessels, the Card because she improperly assumed that the two-blast signal was for the Du Bois rather than for herself and attempted to force the Tokio to pass through a narrow passage without obtaining an answer to her own one-blast signal. We think that both vessels were properly held at fault.

It is contended on behalf of the Tokio that there was not room to pass safely between the Du Bois and the Card and that it was safer to go to port where the easterly half of the channel was clear, than to go down on the west side where the presence of the Du Bois made the passage narrow. It is also argued that the Tokio had a right to assume that the answer to her signal was from the Card because the latter was in the line of her course, whereas the Du Bois was 200 feet or more to the west of it. We may concede that it was safer for the Tokio to suggest a starboard to starboard passage under the circumstances without admitting that she had a right to proceed at full speed when an answer to her signal had not been given by both the vessels that were approaching her. Rule 3 of the Pilot Rules of United States Supervising Inspectors provides that: "The signals for passing, by the blowing of the

whistle, shall be given and answered by pilots, in compliance with these rules, not only when meeting 'head and head', or nearly so, but at all times when the steam vessels are in sight of each other, when passing or meeting at a distance within half a mile of each other, and whether passing to starboard or port."

The rule applies in terms to all vessels within a half mile of one another provided they are "passing or meeting." It plainly embraced both the Card and the Du Bois, and required the Tokio to ascertain the intention of each or to hold back until she did. It is argued that it would have been confusing for the Tokio to attempt to signal both tugs and impracticable for her to hold back if she did not obtain answers from each. Yet had she done this, there would have been no collision, and nothing less conformed to the rule. Strangely enough we have found no decision in which the duty to signal to two meeting vessels has been discussed, but the interpretation we have placed on rule 3 seems not only because of its terms inevitable but sensible and practical as well.

Apparently the Tokio and the Card were "approaching each other head and head, that is, end on, or nearly so," and under normal conditions it was "the duty of each to pass on the port side of the other." Pilot Rules (Inland Rules) art. 18, rule 1 (33 USCA § 203, rule 1). But if, as seems to have been the case here, the course of the Du Bois was too close to that of the Card to make passage between them at full speed safe, the Tokio ought to have held back until the Du Bois got by and the Card ought to have done likewise. On the other hand, if the Tokio chose to attempt a starboard to starboard passage with the Card she should have waited to obtain the consent of the latter. Instead of doing this, she went right on at full speed until it was too late to avoid a collision. She should not have thus proceeded without receiving an assent to a starboard to starboard passage. Marshall Field & Co. v. United States (C. C. A.) 48 F.(2d) 763; Chester A. Poling, Inc., v. United States (C. C. A.) 55 F.(2d) 921. Indeed, her pilot said that he would have stopped if he had known that the Card had not answered his two-blast signal, but he would have known had he taken pains to obey rule 3, and to signal each vessel.

The fault of the Card was greater. She came up along the center of the channel only 400 feet behind the Du Bois and, after the Tokio had sounded a two-blast signal for a starboard to starboard passage, proceeded for a minute or two, without making any reply or slackening her pace, and then suddenly, when less than 1,200 feet away, went to starboard, blew a one-blast signal to the Tokio, and tried to force her through the narrow passage between the Du Bois and the tow of the Card. This she did without receiving any reply to her signals and, as a result, brought her tow across the bow of the Tokio when it was too late to avert a collision. Thus she not only undertook a dangerous manoeuvre, but violated the rule by going forward at full speed without obtaining an assent to her signals.

The interlocutory decree holding each vessel at fault is affirmed.