**OIL TRANSPORT COMPANY,**
Incorporated

v.

**THE LUNGA POINT, Her Engines, Etc.,**
and
**Ohio Barge Line, Incorporated.**
No. 3005.

United States District Court
E. D. Louisiana,
New Orleans Division.
Dec. 3, 1959.

Deutsch, Kerrigan & Stiles, Cornelius G. Van Dalen, Christopher Tompkins, New Orleans, La., for libelant.

Lemle & Kelleher, George B. Matthews, New Orleans, La., Reed, Smith, Shaw & McClay, Paul J. Winschel, Pittsburgh, Pa., A. D. Fulmer, Mobile, Ala., of counsel, for respondent.

CHRISTENBERRY, Chief Judge.

This case having come on for trial upon the pleadings and proof of the parties, was submitted to the Court for decision upon briefs and argument of counsel. After due deliberation the Court now makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. At all material times libelant was the owner of the Tug *Bayou Plaquemine* and the Steel Tank Barges *OTC–61, OTC–62* and *OTC–63.*

2. At all material times respondent was the owner of the Steamer *Lunga Point* and the Steel Barges *OBL–450* and *OBL–500.*

3. The *Bayou Plaquemine* is a single-screw, steel-hull diesel tugboat, 93 feet in length, 22½ feet in beam and 10 feet in depth. She is powered by a single 900-hp diesel engine which is pilothouse controlled.

4. The *Lunga Point* is a twin-screw, steam-propelled towboat of some 3,000-hp. She is 80-feet in length, 56 feet in beam and draws 9½ feet. Her reciprocating steam engines are engine-room controlled. At all material times, she was pushing a tow of seventeen cargo barges loaded with steel. This flotilla had a combined width of 104 feet and an overall length of 880 feet.

5. The *Bayou Plaquemine* was pushing a tow of four barges, made up as follows: The *Abaco Pittsburgh,* a steel tank barge, 290 feet in length, 50 feet in beam, with a loaded draft of 9½ feet, was the face barge of the flotilla secured to the bow of the *Bayou Plaquemine.* Ahead of the *Abaco Pittsburgh,* in the port string of the tow, were the *OTC–62* and *OTC–63* in that order, with the *OTC–62* in the lead. On the starboard side of those barges was the *OTC–61.* The bow rake of the *OTC–61* was some 80 feet abaft the headlog of the port lead Barge *OTC–62.* The *OTC–61* and *OTC–62* are each 195 feet in length, 25 feet in beam, and were loaded with asphalt to a draft of 9½ feet. The *OTC–63* is a box barge of an integrated unit and has a length of 80 feet, and a beam of 25 feet and was also loaded with asphalt to a draft of 9½ feet. The combined width of the flotilla was 50 feet and its overall length 658 feet.

6. At approximately 11:35 PM on April 22, 1956, the *Bayou Plaquemine* was proceeding upstream in the Ohio River in the vicinity of Mile 560.3 and was below Broadway Hollow Light in a gradual bend of the river (right-hand for upbound vessels) and about midstream, angling toward the Kentucky shore (right ascending bank) in such a way as to shape up on that shore and run the point up to Broadway Hollow Light, the point of this bend.

7. At about the same time the *Lunga Point* was negotiating passage beneath the Madison Highway Bridge which spans the Ohio River at Mile 557.3, and was then about 3 miles upstream of the *Bayou Plaquemine.*

8. In the vicinity of Mile 560.3, the sailing line is approximately in the middle of the stream. It falls slightly to the right in the vicinity of Broadway Hollow Light, passing there approximately 500 to 600 feet off the Kentucky shore. Above Broadway Hollow Light it swings to the center of the river before falling toward the left ascending bank to favor the Indiana shore upstream in the vicinity of Mile 558.

9. Downbound vessels customarily pass the point at Broadway Hollow Light 500 to 800 feet off before widening out in the bend to pass upbound traffic port-to-port. The width of the Ohio River in the vicinity of Broadway Hollow Light is about 1,700 feet.

10. On this occasion there was moonlight and visibility was very good. There was little or no wind and the *Bayou Plaquemine* flotilla was making good a speed over the ground of about 3 to 3½ miles-per-hour against a 3 to 4 mile current. Proper navigation lights were displayed on both tug and tow, and had been checked at regular intervals throughout the watches.

11. At approximately 11:38 PM the *Bayou Plaquemine* flotilla began to pass beneath certain overhead power lines which cross the Ohio River from a power house on the Indiana shore at Mile 560.2. At that time the *Bayou Plaquemine's* master observed a search light beam directed down into the bend of the river from near the Madison Highway Bridge. Shortly thereafter he sighted the *Lunga Point* by radar at a distance of about 2.8 miles upstream, on the Indiana side of the river, apparently following the sailing line.

12. The *Lunga Point* was making good a speed of 10 miles-per-hour over the ground with the current under foot. She was equipped with radar, but was not using it.

13. The *Bayou Plaquemine* tow emerged from beneath the power lines on the Kentucky side of the river and maintained her course and speed upstream under the point of the bend marked by Broadway Hollow Light. Her master sighted the running lights of the approaching tow visually at a distance of approximately 1.5 miles. The *Lunga Point* was still following the sailing line about midstream, or slightly toward the Kentucky shore. Those in charge of the *Lunga Point's* navigation had not as yet sighted the *Bayou Plaquemine* or her tow.

14. When the heads of the respective flotillas were about one mile apart, visually and by radar, bearing end-on or nearly so, the *Bayou Plaquemine's* master sounded a one-blast whistle signal proposing a normal port-to-port passing. The flash of her whistle light, operated in conjunction with the sound signal, was seen on the deck of her barges. Those aboard the *Lunga Point* did not hear the signal nor see the signal light.

15. Following her one-blast signal, the *Bayou Plaquemine* was slowed to one-quarter speed and her angling course was maintained, bringing her nearer to the Kentucky shore under the point at Broadway Hollow Light.

16. The *Lunga Point* angled closer to the Kentucky shore, and her master finally observed the presence of the *Bayou Plaquemine* at a distance of slightly more than a mile. Although he saw that the *Bayou Plaquemine* was angling toward the Kentucky side, he sounded no passing signals and maintained his vessel's course toward the Kentucky shore at a speed of 10 miles-per-hour.

17. Having failed to secure a response from the *Lunga Point*, the *Bayou Plaquemine's* master repeated his one-blast signal when the forward ends of the respective tows were between one-half and three-quarters of a mile apart, visually and by radar. At the same time he disengaged the engine clutch, and angled the tow even closer to the Kentucky shore to allow the downbound flotilla as much room in the bend as possible.

18. The *Lunga Point* did not sound a signal until her lead barges were only some 600 feet from the head of the *Bayou Plaquemine's* tow on a collision course. She then sounded a two-blast signal followed by a danger signal and put her engines in reverse. At the same time she angled her tow more sharply toward the Kentucky shore and across the course of the *Bayou Plaquemine*.

19. At the time he sounded the two-blast signal, the pilot of the *Lunga Point* was uncertain whether a starboard-to-starboard passage could be accomplished safely.

20. When the *Bayou Plaquemine* heard the *Lunga Point's* two-blast whistle signal she answered immediately with a danger signal of six or seven short blasts to indicate that such a passing was impossible because of her own proximity to the Kentucky shore and the rapid closing of the *Lunga Point*. Simultaneous with sounding the danger signal, the *Bayou Plaquemine* reversed her engines to full astern.

21. At approximately 11:52 PM (CST) (between two and three minutes after the *Bayou Plaquemine's* engines were put full astern), the two starboard lead barges in the *Lunga Point* flotilla collided with the forward port corner of the *Bayou Plaquemine's* lead barge, *OTC–62*. The *OTC–62* sank shortly thereafter and part of her cargo of asphalt was lost. The impact also caused damage to the *OTC–61* which was made up to starboard of the *OTC–62*.

22. The collision occurred slightly more than one-half mile below Broadway Hollow Light at about Mile 559.7 on the Ohio River, approximately 300 feet off the Kentucky shore. The *Bayou Plaquemine* was stopped at the time of impact; the *Lunga Point's* speed had been barely reduced from 10 miles-per-hour.

23. It requires approximately 8–10 minutes for the *Lunga Point* to stop her forward motion when her engines are reversed while going 10 miles-per-hour in still water.

24. Following collision, the *Lunga Point* and a cluster of her barges, which had broken free as a result of the impact, passed downstream in the open expanse of water on the port side of the *Bayou Plaquemine* flotilla.

### Conclusions of Law

1. This court has jurisdiction of the action, and venue is properly laid in the Eastern District of Louisiana, 28 U.S.C. § 1333.

■ 2. The collision in suit was caused proximately and solely by the negligence of the *Lunga Point* in the following particulars:

a—In failing to answer the whistle signals of an upbound vessel. Rule 18 (a), Pilot Rules for the Western Rivers, 33 U.S.C.A. § 343; The Franconia, D.C. S.D.N.Y.1880, 3 F. 397, 402.

b—In failing to notice an adequate whistle signal blown at a proper distance. The Franconia, D.C.S.D.N.Y.1880, 3 F. 397, 402; The Baltic, D.C.S.D.N.Y. 1890, 41 F. 603; The Baltimore, D.C.S. D.N.Y.1893, 56 F. 127; The William E. Ferguson, D.C.S.D.N.Y.1901, 108 F. 973; The Peconic, D.C.S.D.N.Y.1903, 124 F. 848; The Dictator, 2 Cir., 1909, 169 F. 789; The John Arbuckle, 2 Cir., 1911, 185 F. 240.

c—In proceeding at full speed ahead with a current under foot approaching a bend in the river where a change of course would be necessary. The Charlotte, D.C.1892, 51 F. 455; Standard Oil Co. v. United States, 9 Cir., 17 F. 2d 366, 1927 A.M.C. 427; Wood Towing Corp. v. Paco Tankers (The Chilbar), 4 Cir., 152 F.2d 258, 1945 A.M.C. 1422.

d—In failing to slacken her speed or stop and reverse when approaching another vessel so as to involve risk of collision. Rule 21, Pilot Rules for Western Rivers, 33 U.S.C.A. § 346; Title 33 CFR Section 9505; The New York, 1899, 175 U.S. 187, 207, 20 S.Ct. 67, 44 L.Ed. 126; The Aurania, D.C.S.D.N.Y.1886, 29 F. 98, 123, 124; The Paris, D.C., 37 F.2d 734, 1930 A.M.C. 153, affirmed 2 Cir., 44 F.2d 1018, 1930 A.M.C. 1874.

e—In attempting to effect a starboard-to-starboard passing contrary to the rules, to the relative position of the vessels, to the obvious course of the other vessel and to the point and bend custom of the river. Rule 18(a), Pilot Rules for the Western Rivers, 33 U.S.C.A. § 343; The Franconia, D.C.S.D.N.Y. 1880, 3 F. 397, 402; The Frostburg, D.C. Md.1885, 25 F. 451; The Cetus, 2 Cir., 1913, 202 F. 189; The Dauntless, 2 Cir., 3 F.2d 529, 1925 A.M.C. 285; Bisso Towboat Co. v. United States, 5 Cir., 6 F.2d 132, 1925 A.M.C. 951; The Stephen R. Jones, 5 Cir., 27 F.2d 208, 1928 A.M. C. 1387; The Norne, 5 Cir., 59 F.2d 145, 1932 A.M.C. 1598; The City of Tokio, 2

Cir., 77 F.2d 315, 1935 A.M.C. 760; Construction Aggregates Co. v. Long Island R. Co. (The Sandmaster), 2 Cir., 105 F.2d 1009, 1939 A.M.C. 1341; Pure Oil Co. v. The F. B. Walker (McElroy-Walker), D.C.E.D.La., 127 F.Supp. 867, 1955 A.M.C. 413, 418.

f—In altering course to her left and attempting to effect a starboard-to-starboard passing before receiving a reply from the *Bayou Plaquemine* to her two-blast whistle signal. Belden v. Chase, 1893, 150 U.S. 674, 701, 703, 14 S.Ct. 264, 37 L.Ed. 1218; The Franconia, D.C. S.D.N.Y.1880, 3 F. 397, 402; The Titan, 2 Cir., 1892, 49 F. 479; The Cetus, 2 Cir., 1913, 202 F. 189; The Bilbster, 2 Cir., 6 F.2d 954, 1925 A.M.C. 795; Marshall Field & Co. v. United States, 2 Cir., 1935, 48 F.2d 763; The City of Tokio, 2 Cir., 77 F.2d 315, 1935 A.M.C. 760; Construction Aggregates Co. v. Long Island R. Co. (The Sandmaster), 2 Cir., 105 F.2d 1009, 1939 A.M.C. 1341.

g—In adhering to a course for some ten minutes which would bring her across course of the *Bayou Plaquemine* as clearly indicated by relative bearing. Rule No. 18, Pilot Rules for the Western Rivers, 33 U.S.C.A. § 343, Title 33 CFR Section 9505. The Texas, 2 Cir., 1912, 198 F. 482.

h—In failing to sound a timely danger signal when in doubt. Rule 24(a) Pilot Rules for the Western Rivers, 33 U.S.C.A. § 349; Rule 25, Pilot Rules for the Western Rivers, 33 U.S.C.A. § 350.

3. The *Bayou Plaquemine* is free from fault. She sounded an appropriate one-blast signal when one mile from the downbound flotilla, and slowed to one-quarter speed. She repeated her signal at a distance of one-half mile, idled her engines and angled closer to her own right bank under the point to provide the downbound vessel as much room in the bend as possible; she sounded her danger signal immediately after receiving the belated two-blast proposal and placed her engines full astern. She was stopped in the water at the time of impact which occurred only 300 feet from her own right bank.

4. Libelant is entitled to full recovery for loss of cargo, salvage charges incurred in raising the sunken Barge *OTC–62*, cost incurred in repairing said barge and Barge *OTC–61* and loss of profit as a result of the collision. The cross-libel and third party action filed by respondent are dismissed.